No. 1,629.

EUGENE G. DICKEY, RESPONDENT, v. HENRY L. DAVIS, APPELLANT.

VERDICT.—Where a case is tried by a jury, if the Judge is not satisfied with the verdict, and is convinced that it is clearly against the weight of the evidence, it is his duty to set it aside, even though there may have been some conflict in the testimony.

APPEAL from the District Court of the Fifteenth District, City and County of San Francisco.

The facts are stated in the opinion.

James C. Carey, for Appellant.

First—There was no change of the possession of the property pretended to have been sold to Eugene G. by James R. Dickey, as required by law. But even if there had been a change of possession, the sale itself, as to creditors, was fraudulent; it was made in trust for the use and benefit of James R. Dickey.

Second—Conflicting testimony does not prevent the Court from granting a new trial. (3 Graham & W.'s New Trials, p. 1207.)

The Judge should be satisfied with the verdict before he allows it to stand as a finality. He should be satisfied that the merits have been fully and fairly tested and determined; and when he is not—when the legal conviction on his mind

is that the verdict is against the evidence—is not the true
and just result of it—a new trial should be promptly
awarded as the only and effectual correction. (*McLanahan*
v. *Universal Insurance Co.* 1 Pet. 170; 3 Graham & W.'s
New Trials, p. 1207; *Antone Company* v. *Ridge Company*,
23 Cal. 220.)

*Third*—In such a case this Court will examine the testi-
mony regardless of the verdict and the opinion of the Court
below. (*Stevens* v. *Irwin*, 15 Cal. 503; *Say* v. *Neville*, 25
*Id.* 252; *Godchaux* v. *Mulford*, 26 *Id.* 319; *Ford* v. *Chambers*,
28 *Id.* 18; *Woods* v. *Bugbey*, 29 *Id.* 469.)

*Sharp & Lloyd*, for Respondent.

When there is a conflict of evidence this Court will not
interfere with the verdict. (*Drake* v. *Palmer*, 2 Cal. 180–2;
*Speck* v. *Hoyt,* 3 *Id.* 420; *Barnett* v. *Whitesides*, 15 *Id.* 36;
*Peters* v. *Foss*, 16 *Id.* 358; *Quinn* v. *Kenyon*, 22 *Id.* 82; *Peters*
v. *Bugbey*, 24 *Id.* 422; *Hill* v. *Smith*, 32 *Id.* 166; *Kile* v.
*Tubbs*, 32 *Id.* 332; *Ludlow* v. *The U. Ins. Co.* 2 S. & R. 136;
*Mackey* v. *N. Y. Cen. R. R. Co.* 28 Barb. 528–40; *Bacon* v.
*Parker*, 12 Conn. 218; *Sullivan* v. *Doelen.* 13 Ill. 85.)

CROCKETT, J., delivered the opinion of the Court:

The action is for the recovery of the furniture and certain
other personal property which appertained to a hotel, known
as the "Ocean House," and which was seized by the defend-
ant, as Sheriff of the City and County of San Francisco, as
the property of James R. Dickey, by virtue of an execution
against him in favor of McGlynn, on which the execution
issued which was levied on the property. A verdict and
judgment having been rendered for the plaintiff, the defend-
ant moved for a new trial on the ground that the evidence
was insufficient to justify the verdict, and that it was against
law. The Court denied the motion, and in rendering its
decision said: "If the case had been tried by the Court,
without a jury, it is altogether probable a finding from the
facts in evidence would have been in favor of the defendant.
But as the evidence was conflicting this Court does not feel

authorized to disturb the verdict." From this order the defendant has appealed.

The sale from James R. Dickey to the plaintiff was sought to be impeached on two grounds, to wit: First—That the alleged sale was not accompanied by an immediate delivery, and followed by an actual and continued change of possession, as required by the Act concerning fraudulent conveyances. Second—That the sale was intended to hinder and delay the creditors of James R. Dickey, and was, therefore, fraudulent and void as to McGlynn, who was one of the creditors.

The only question for our decision is whether or not the District Court abused its discretion in refusing to set aside the verdict and grant a new trial.

After a careful examination of the evidence we are unable to discover any substantial conflict in it. The plaintiff was examined as a witness on his own behalf, and his testimony was to the effect that his brother, James R. Dickey, up to the time of the sale, had been the owner of the property, and carried on the business of the hotel, in which the plaintiff for some months had been employed as barkeeper, on a salary; that the plaintiff had no money or property, and James R. Dickey was owing debts exceeding $10,000; that the plaintiff purchased the property at the price of $5,136, and took a bill of sale for it; that no cash was paid at the time of the sale or afterwards, but the plaintiff gave his three promissory notes for the purchase money, payable at a future time, and which were not secured by mortgage or otherwise; that these notes were afterwards transferred and delivered by James R. Dickey to some of his creditors, and have not been paid, but on the maturity of one or more of the notes the holders of them granted the plaintiff an extension of time, on his giving a mortgage on the furniture to secure them; that on the day succeeding the execution of the bill of sale, James R. Dickey, with his family, left the premises and went to the city, but at the expiration of one week brought his family back, and again occupied the same rooms in the hotel which they recently vacated, and continued so to occupy them for about one year; that when he

returned with his family to the hotel the plaintiff employed him to assist in conducting it at a salary of $100 per month, and board and lodging for himself and family; and that the said James R. Dickey was also to be paid $100 per month for the rent of the house, which he then claimed to own, but his title to which afterwards failed; that at the time of the sale a small sign behind the bar, with the name of James R. Dickey upon it, was taken down, and the servants were notified of the change of proprietors, and that thenceforth they were to be in the employment of the plaintiff; that after James R. Dickey returned to the hotel he performed pretty much the same duties about the premises that he had performed before the sale, and his salary was paid from time to time as he needed it, and the amounts paid were charged to him in the books; that one of the horses included in the sale was afterwards levied upon as the property of James R. Dickey by one of his creditors, and the plaintiff agreed to let the creditor have the horse in satisfaction of the debt. James R. Dickey was also called as a witness for the plaintiff, and gave in substance the same history of the transaction. The only testimony on this point by the defendant was to the effect that some casual visitors to the hotel and several of the servants noticed no change in the management of it and in the respective duties performed by the plaintiff and his brother after the sale from what they had been before.

We discover no material conflict in the evidence in any particular; and giving to it a fair and reasonable construction, the only question to be decided, is whether or not it establishes that there was an immediate delivery accompanied by an actual and continued change of possession, and if so, whether it was intended to hinder and delay the creditors of James R. Dickey. We think it is impossible to resist the conclusion, from the whole evidence as given by the parties to the transaction, that the change of possession was only colorable and simulated, and not actual. And we think it is equally plain, that the purpose of the sale was to hinder and delay the creditors of James R. Dickey. It is not a case of conflicting evidence, in which a jury might

weigh the testimony and incline to the one side or the other without manifest injustice to either. On the contrary, viewing the evidence in its natural light, and applying to the transaction the tests by which human conduct is ordinarily judged, but one conclusion can result, to wit: that the sole purpose of the pretended sale was to hinder and delay the creditors of James R. Dickey; and the nominal delivery of the possession was intended to give a color of fairness to the transaction, whilst, in fact, the *actual* dominion over the property was not changed.

But even though there had been a conflict in the evidence, the judgment ought to be reversed on another ground. In denying the motion for new trial, the District Judge said that "if the case had been tried without a jury, it is altogether probable a finding from the facts in evidence would have been in favor of the defendant. But as the evidence was conflicting, this Court does not feel authorized to disturb the verdict." The Court was not satisfied with the verdict, but refused to disturb it because there was some conflict in the evidence. This is not the correct rule. In this Court, when there is a substantial conflict in the evidence, we decline to set aside a verdict or finding of facts as being contrary to the weight of evidence, solely because we have had no opportunity to observe the manner of the witnesses, and to decide upon their credibility. But this reason does not apply to the District Judge—and though it is the peculiar province of the jury to decide upon the facts submitted to them, generally, in doubtful cases, the verdict ought not to be set aside as contrary to the weight of the evidence; nevertheless, if the Judge is not satisfied with the verdict, and is convinced that it is clearly against the weight of the evidence, it is his duty to set it aside, even though there may have been some conflict in the testimony. He has had the same opportunity as the jury to observe the manner of the witnesses, and to decide upon their credibility, and it is his duty to see that the verdict is not clearly against the weight of evidence. He must exercise a wholesome and discreet supervision over the jury in this respect. "The

fact that there may have been evidence submitted to the jury on both sides of the points at issue, does not exclude the exercise of this beneficial supervision. If it did, no matter how weak the testimony on one side and how strong on the. other, the Judge would be restrained from interference, notwithstanding the verdict was manifestly against the weight of evidence. If such a rule was adopted, litigants would be sure to accommodate themselves to it by introducing mere formal (if they could command no other) evidence, to oust the authority of the Court." (3 Graham & Waterman's New Trials, 1207.)

This reasoning appears to us conclusive; and whilst the Court should be careful not to trench upon the province of the jury, in deciding facts, when the evidence is nearly balanced, it is equally true that it is its duty to set aside the verdict, when plainly against the weight of evidence, even though there may have been some conflict in the testimony.

Judgment reversed and new trial ordered.