## PHILLIPS *v.* THE SARAH and THE TUCKER.[1]

*(District Court, E. D. Pennsylvania.  March 19, 1889.)*

1. CARRIERS OF GOODS—FAILURE TO DELIVER.
    A common carrier, failing to deliver goods intrusted to it, must show sufficient cause for such failure.
2. TOWAGE—DIRECT ROUTE.
    A tug contracting to convey a tow to its destination must do so in the most direct customary route, exercising care and skill in so doing.
3. SAME—ACCIDENT TO TOW—NEGLIGENCE OF TUG.
    A tug contracting to tow a barge from Gray's Ferry to its destination at Cooper's Creek, violated her obligation by stopping at Point Breeze to deliver a cargo, thereby having to lay to for the night at Christian-Street wharf. The barge sprung a leak at the latter place, and capsized. *Held* that, the disaster having occurred while the tug was violating her duty, she must prove it was unavoidable, and did not result from her disregard of duty.

In Admiralty.  Libel for goods lost.

The facts were as follows:  Libelant shipped brimstone, by the barge Tucker, from Harrison Bros. & Co.'s wharf, Gray's Ferry, Philadelphia, to Cooper's Creek, N. J.  The barge engaged the services of the tug Sarah to tow her from Gray's Ferry to Cooper's Creek.  The tug, having on board a cargo of barrels, stopped at Point Breeze to unload them, and was detained there so that she had to proceed with the barge to Christian-Street wharf, Philadelphia, and lay up for the night.  While there the barge sprung a leak, and capsized.  The libel was thereupon filed to recover the value of the goods.  The tug defended on the ground that the accident was unavoidable.

*Francis S. Brown* and *Theodore Etting*, for libelant.

*John F. Lewis*, for tug Sarah and barge Tucker.

BUTLER, J., *(after stating the facts as above.)*  The obligations of the barge were those of a common carrier.  Having shown no sufficient excuse for her failure to carry the merchandise safely, she is liable for the loss sustained.  Those of the tug were different.  They were to convey the barge expeditiously, by the most direct customary route, to her destination, exercising proper care and skill in doing it.  She entered upon the service with intent to disregard her obligations.  Having on board a cargo of barrels, she intended stopping at Point Breeze to unload them, then proceed to Christian-Street wharf, and lay up for the night, and this she did.  How much time was lost at Point Breeze is uncertain.  Evidently it was considerable.  One witness (who was on board) says she waited for help to unload, and lost several hours.  Other witnesses make the time less.  I have little doubt it was more than two hours.  Leaving Gray's Ferry near 1 o'clock, (as I believe,) she did not reach Christian street until about 7.  How long she lay at the wharf before capsizing, is not clear.  It was probably near an hour.  Whether she could have reached her destination by this time is uncertain.  While I incline

---

[1] Reported by C. Berkeley Taylor, Esq., of the Philadelphia bar.

to believe she could not, I am not convinced of it. It is unimportant that the tug could not enter Cooper's Creek. Having undertaken the service, she was obliged to get the barge there. If unable to do so, she should not have undertaken it. It is equally unimportant that her owner ordered her to stop at Point Breeze, and lay up at Christian street. He had undertaken to carry the libelant's merchandise, and it was his duty to do so, expeditiously and directly. The tug's obligations corresponded precisely with his. As before stated, she started with the barge, apparently seaworthy, and in good condition. While lying at Point Breeze, the latter was found to be leaking. This leak appears to have been stopped. After reaching Christian street, she was leaking again, very badly, in another place. This leak could not be stopped, and very soon capsized her. Under these circumstances, the tug must prove that the misfortune did not result from her disregard of duty. This she has not done. It is urged that the barge could not have reached her destination by the time she capsized, and that the misfortune was inevitable. As before remarked, it is not proved that she could not have reached her destination before the time stated. It certainly is not proved that the extraordinary leakage, and the unusual consequences, would have occurred, if she had been kept directly and expeditiously on her course. Witnesses are produced who say they do not know that she was bumped or jammed; and that she was handled skillfully—so far as they observed. This, however, is not sufficient. It does not tend to account for the extraordinary occurrence—of a vessel in apparently good condition, in smooth water, springing two leaks in the course of a few miles, one of them so bad as to be uncontrollable and capsize her. The disaster having occurred while the tug was violating her duty, she must, as before stated, prove that it was unavoidable. This she has not done. To say that the leakage might, and probably would, have occurred in the absence of such violation of duty is simply guessing. Possibly it is true. To admit that it is probably true, would not help the respondent. It is not shown to be true, and cannot be shown. In this respect the case is much like *Davis* v. *Garrett*, 6 Bing. 722, in which a vessel was charged with a loss of her cargo while off her course, by storm. It was urged in answer, that the storm would have caused the loss, if the deviation had not occurred. The court very properly said:

"But the objection taken is that there is no natural or necessary connection between the wrong of the master in taking the barge out of its proper course, and the loss itself: for that the same loss might have been occasioned by the very same tempest, if the barge had proceeded in her direct course. But if this argument were to prevail, the deviation of the master, which is undoubtedly a ground of action against the owner, would never, or only under very peculiar circumstances, entitle the plaintiff to recover. For if a ship is captured in the course of deviation, no one can be certain that she might not have been captured if in her proper course. And yet, in *Parker* v. *James*, 4 Camp. 112, where the ship was captured whilst in the act of deviation, no such ground of defense was even suggested. Or, again, if the ship strikes against a rock, or perishes by storm, in the one course, no one can predicate that she might not equally have struck upon another rock, or met with the same or another storm, if pursuing her right and ordinary voyage. The same answer might be at-

tempted to an action against a defendant who had, by mistake, forwarded a parcel by the wrong conveyance, and a loss had thereby ensued; and yet the defendant in that case would undoubtedly be liable."