## THE THOMAS PURCELL, JR.

(Circuit Court of Appeals, Second Circuit. December 7, 1898.)

### No. 17.

TOWAGE—LOSS OF TOW—LIABILITY OF TUG FOR NEGLIGENCE.

A tug is responsible for the loss of a tow, a barge laden with coal, which she anchored in the evening in an exposed place, proceeding to another port, where, by reason of not keeping a watch during the night, her master was not advised of an approaching storm in time to reach and save the barge before it was sunk.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here on appeal from a decree of the district court, Southern district of New York, holding the appellants, as owners of the steamtug Thomas Purcell, Jr., responsible for damages sustained by the sinking of libelant's barge F. B. Morris and her cargo of coal, laden on board about noon on the 19th day of March, 1896, in Stamford Harbor. The Purcell arrived at Stamford Harbor between 6 and 7 o'clock on the evening of the 18th, and, the tide being too low to admit of taking the Morris up the dugway, she anchored her near the lighthouse, and proceeded with her other three tows to Wilson's Point, where she arrived a little before midnight.

The following is the opinion of the district judge (BROWN, District Judge):

The evidence shows it is not customary to leave boats off Stamford in stormy weather; but to take them in to Wilson's Point, four miles further on.

In threatening weather the same rule would require the tug to keep a lookout on the weather, and to return to Stamford to take along a boat left there, in time to prevent damage.

It is plain from the proofs that when the Purcell arrived at Wilson's Point, about 12, a storm was threatened; and it was her duty to go at once, and bring the libelant's boat from Stamford to Wilson's Point. She could have done so easily in 1½ hours. But the master was ill; and the pilot, who was in charge, turned in, kept no watch on the weather; and when he got on deck, at 8 a. m., he found the weather too bad to go to Stamford for the boat he had left there. He cannot take advantage of his own negligence. Had a watch been kept, it would have been plain by daylight—at 5 a. m.—that he should go at once for the Stamford boat, as he might even then have done, and been back by 6:30 a. m., when it was only half a gale. I must hold the tug, therefore, liable. The Governor, 77 Fed. 1000; The American Eagle, 54 Fed. 1010; The Battler, 55 Fed. 1006.

I do not think I should hold the boatman negligent in not beginning earlier to throw coal over, so as to get on the hatches. He had a right to expect the tug to come for him for a time; and later the storm became too fierce for him to get the covers on alone; and I doubt whether the covers, if on, would have saved the boat.

Decree for libelant.

Samuel Park, for appellants.
Le Roy Gove, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. Concededly, no attention was paid to the weather by those on the tug from the time she anchored at Wilson's Point

till her pilot turned out, at 8 a. m. the next morning. In view of the evidence from the weather bureau that the wind from midnight until 11 a. m. was southwest, and the testimony of the disinterested witness from the Pennsylvania barge as to the indications of a storm at Wilson's Point, when he got up, at 4 a. m., we concur in the conclusion of the district judge that, had a watch been kept, the master of the tug would have been advised of the necessity of returning to care for the Morris in ample time to have saved her from disaster. The decree of the district court is affirmed, with interest and costs.