· WILLIAMS, Adm'r, v. ALASKA COMMERCIAL CO.

(First Division. Juneau. March 3, 1903.)

No. 137A.

1. NEW TRIAL—MOTION—STATEMENT OF GROUNDS.

The object of a motion for a new trial is to call the attention of the court specifically to the errors that are claimed to have been made during the trial, that the court may have an opportunity to investigate those questions anew; and if he finds error has been committed to award a new trial without subjecting the parties moving to the expense of taking the case to a higher court.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. New Trial, § 254.]

2. SAME—SPECIFICATION OF ERRORS.

A motion for a new trial which does not specify the ground therefor, in compliance with section 229 of the Code of Civil Procedure, is not sufficient under the statute, and will not be regarded by the court.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. New Trial, §§ 254–257.]

3. SAME.

Where a motion for a new trial states the ground generally "that such verdict is against the law," it is insufficient, it is not

"plainly specified" as required by statute, and does not give notice to the court or opposing counsel of the specific error or point relied upon.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. New Trial, § 261.]

4. SAME.

A motion for a new trial which states "that such verdict is against the law" is not sustained by showing that the verdict is not sustained by the evidence.

.[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. New Trial, § 261.]

5. SAME.

A statement in a motion for a new trial generally, "error in law occurring at the trial and excepted to by the defendant herein," is insufficient; it should specifically point out the error complained of.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. New Trial, §§ 254–257.]

6. SAME—EVIDENCE—TRIAL.

If exception or objection is heard to the ruling of the court on the admission of evidence, the question and answer should be set forth in the motion for a new trial, and the ground of objection stated as on the trial, so that the court may have its attention specifically directed to the claimed erroneous ruling.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. New Trial, § 258.]

7. SAME—EXCEPTION—TRIAL.

If exception is taken to a particular instruction of the court, the instruction objected to should be quotio in hæc verba in the motion for a new trial, and the ruling of the court thereon indicated in detail.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. New Trial, § 259.]

8. SAME—DEMURRER—EVIDENCE.

Where a ground of motion for a new trial is the insufficiency of the evidence on a particular point, the particulars thereof must be specifically pointed out, and where the motion is based upon the total failure of proof, where it is intended as a general demurrer to the evidence, it may be stated in the language of

the statute, as "insufficiency of the evidence to justify the verdict or other decision."

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. New Trial, §§ 258, 259.]

9. SAME.

All errors occuring on the trial, to be taken advantage of on an appeal, must be clearly stated in the motion for a new trial, and any not included in the motion for a new trial will not be regarded. The general rule is that the grounds of a motion for a new trial must be stated so specifically as to direct the attention of the court and opposing counsel to the precise errors complained of. The mere statement of the ground, without further specification, will therefore be insufficient. The court will not, upon the statutory statement only, wade through the whole record, and examine each ruling and instruction to ascertain if error was committed, but will deny the motion for noncompliance with section 229, Code Civ. Proc.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. New Trial, §§ 254–257.]

10. SAME—GROUNDS—VERDICT CONTRARY TO EVIDENCE.

Where there is a fair conflict of testimony, the court will not grant a new trial, even though the judge might have found different upon the same evidence. Where the weight of evidence is so manifestly against the verdict that it is evident that the jury were influenced by prejudice or passion, it would be the imperative duty of the court to set the verdict aside, and a failure to do so would be an abuse of discretion.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. New Trial, §§ 135–148.]

11. DEATH—DAMAGES.

A verdict for $5,000 in an action for damages for causing the death of a man 21 years old, in good health, and capable of earning good wages, *held*, not excessive.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Death, §§ 125–130.]

12. TRIAL—INSTRUCTIONS—NEW TRIAL.

It is not error for a trial court, in its instructions to a jury, to state so much of the admitted facts as may be necessary to illustrate and apply the law to the case on trial.

13. ADMIRALTY—DAMAGES—TORTS.

The steamer Bertha engaged to tow the schooner Dora B. to Lituya Bay, but owing to rough wheather passed that port and

steered for Yakutat. Before reaching Yakutat, and while off the coast of Alaska, the hawser parted. Instead of returning to the tow and rendering further assistance, the Bertha kept on her course, abandoning the Dora B., which was carried on the coast and wrecked, and the deceased lost his life. *Held*, that it is immaterial that the parting of the hawser happened over three miles off shore and out of the jurisdiction of the court, it appearing that the disaster which caused the decedent's death happened upon the shore within the three-mile limit and within the jurisdiction of the court.

14. SAME—DAMAGES—JURISDICTION—NEGLIGENCE.

A suit in admiralty cannot be maintained in a court of the United States, either under the general maritime law or any act of Congress, to recover damages for the death of a person caused by negligence on the high seas.

John R. Winn and Lewis P. Shackleford, for plaintiff.
Arthur K. Delaney, for defendant.

BROWN, District Judge. This action was tried before a jury, and resulted in a verdict for plaintiff in the sum of $5,000. In due time the defendant filed its motion to set aside the verdict and grant a new trial herein, and for grounds thereof set forth each and all of the statutory reasons provided by the laws of Alaska, and states them as follows:

(1) Irregularity in the proceedings of the court, the jury, and the adverse party, and the orders of the court, and abusive discretion of the court, by which said defendant was prevented from having a fair trial.

(2) Misconduct of the jury and the prevailing party.

(3) Accident and surprise which ordinary prudence could not have guarded against.

(4) Newly discovered evidence, material to this defendant, which it could not, with reasonable diligence, have discovered and produced at the trial.

(5) Excessive damages, appearing to have been given under the influence of passion or prejudice.

(6) Insufficiency of the evidence to justify the verdict or other decision, and that such verdict is against the law.

(7) Error in law occurring at the trial excepted to by the defendant herein.

A copy of section 226 of the Code of Civil Procedure, with the title of the cause added, would have subserved the same purpose as this motion.

Section 229 of the Code of Civil Procedure provides that for causes mentioned in subdivisions 1, 2, 3, and 4 of section 226 the motion shall be supported by affidavits. Inasmuch as no affidavits have been filed, and the time therefor has elapsed, it is presumed that those grounds for the motion have been abandoned.

The fifth ground for the motion is for "excessive damages," and will be first considered. The question arises, if the plaintiff had a right to recover, were the damages assessed by the jury at $5,000 excessive? That is the maximum limit as fixed by the law existing at the time of the disaster to the Dora B. Considering the facts in evidence—i. e. that Baldwin was about 21 years of age, was a young man of robust health and good habits, that his life expectancy was $41^{53}/_{100}$ years, and that he was earning good wages at the time of his death—it would seem that the conclusion of the jury was just and reasonable, and that the productive powers of the deceased were far greater in value than the sum of $5,000, to which the jury was limited by law in their verdict. In view of the evidence, the amount of the verdict furnishes to the court no warrant for the conclusion that it was returned under the influence of prejudice or passion. Since counsel in his brief in support of the motion does not refer to the verdict as being excessive in amount, it is reasonable to conclude that this ground of the motion is also abandoned; surely it is without merit.

The next ground of the motion is insufficiency of the evidence to support the verdict.

There are cases that hold that a mere statement of the statutory ground of "insufficiency of evidence," without specifying in what particular the evidence is insufficient, does not present a ground for new trial that a court is bound to pass upon. Where this rule prevails, as in Idaho, Montana, and California, it seems to be predicated upon a statute requiring the statement or bill of exceptions to specify in what particular the evidence is insufficient; and if no such statement or specification is made, the matter may be disregarded on hearing of the motion. I do not refer to these statutes in extenso, but in part only, in order to illustrate my meaning as to the reasons of the rule in the particular jurisdiction referred to. Under our statute, neither a bill of exceptions nor statement is required before the motion for new trial is heard and decided, and we have no statute requiring the particular insufficiency of evidence to be pointed out to the court in the motion for new trial. Even the notice of motion for a new trial is not required. It would seem, therefore, that the motion must stand or fall upon its own merits and the matters stated therein. Section 229, Alaska Code Civ. Proc., reads as follows:

"In all cases of motion for a new trial, the grounds thereof shall be plainly specified, and no cause of new trial not so stated shall be considered or regarded by the court."

Under this statute, what specifications are necessary to be set forth in the sixth ground for a new trial, as to the insufficiency of the evidence to sustain the verdict, and the verdict being against the law?

It would seem not only just to the trial court, but necessary for the consideration of the case on error, that if the insufficiency of the evidence goes to some particular point or proposition involved in the trial, the motion, in order to

make it conformable to our statute, should call the attention of the court to the specific matter upon which a failure of evidence is claimed. If the motion is not thus specific, it does not conform to the statute; and, not being in accord with the statute in this respect, the court is not required to consider it. But in this case the motion is in the language of the statute. It fails to point out or specify any particular proposition involved in the case wherein the evidence is insufficient; so it must be deemed general, and as going to the whole case. Evidently, it is a demurrer to the evidence, and challenges its sufficiency generally.

A general demurrer to a complaint on the ground that the facts pleaded do not constitute a cause of action requires an inspection of the entire record before the court can, without other specification, pass upon the demurrer. The entire evidence in this case is before the court, and the verdict is challenged on the general ground of insufficiency of the evidence to sustain the same; so it seems to follow that the court is required, without other specification, to consider all the evidence before it, as it would consider all the facts stated in a complaint or general demurrer. Considering the evidence, then, as a whole, on the motion as presented, what do we find?

The contract of tow was in form of a receipt in writing, and this was before the court and jury. There was an attempt, at least, on the part of the defendant to perform, and the schooner Dora B. was towed from Juneau to Lituya Bay. The evidence of the plaintiff and defendant agrees as to the towing of the schooner from Juneau to Lituya Bay, and beyond to the point where the hawser parted, and that the steamer Bertha, the towing steamer, sailed away towards Yakutat, leaving the Dora B. where the line parted to make her own way thereafter. Up to this point all the witnesses agree. There are, of course, some minor matters of divergence, but upon the proposition of towing the Dora B. to this point all agree.

2 A.R—4

At this point there is a divergence, the evidence for the plaintiff fixing the locus of the point at which the hawser parted within three miles of the shore of Alaska, and defendant's witnesses stating the distance at a much greater figure—some as high as ten miles. On the defendant's theory of the case the distance from shore at the time the hawser parted was of vital importance. If the distance was more than three miles, according to defendant's theory there could be no recovery, because the statute giving the right to recover does not extend upon the high seas beyond the three-mile limit from shore. But this question was left fairly to the jury by the instructions of the court. Not only so, but the defendant requested a special verdict, and the jury answered upon this proposition as follows:

"Interrogatory. * * * did the wrongful act * * * occur in Alaska, or within three miles of the shore thereof? Answer. Yes."

Several other questions were submitted in the special verdict, and were answered to the same effect by the jury. It is clear that the attention of the jury was specially called to this matter, and that the jury found under the evidence against the contention of the defendant. Does the evidence sustain the verdict? That there is evidence to support the special finding there is no doubt; but had the court been called upon to consider the evidence primarily, it might have considered its weight as against the special finding. The court might possibly have given greater weight to the "log book" than the jury did, and also to the expert testimony; but the log had inherent defects that perhaps the jury considered so important as to render it wholly valueless as evidence, or at least render it unreliable. Whatever the reasons of the jury for giving greater weight to the evidence of the plaintiff in this regard, the court, in the nature of things, cannot know; but the court will not undertake to usurp the functions of the jury. The jury are instructed that they are the exclusive judges of the credibility of wit-

nesses and the weight to be given to the testimony of each and every of them. To say that, because the court might not agree with the jury as to the weight of evidence, the verdict should be set aside, would be to subvert the jury system, and array the judgment of one man against that of twelve, each of whom might be equally competent to judge the character of witnesses and the weight that should be given their testimony.

Where there is such overwhelming evidence against the verdict as to justify the inference that it was rendered under the influence of prejudice, passion, or bias of some kind, the court below should grant a new trial. People v. Vance, 21 Cal. 403; Corning v. Iron Co., 44 N. Y. 577; Dickey v. Davis, 39 Cal. 569.

From an examination of this case, I find no such indication. In considering a motion for new trial, it is said it becomes the duty of the trial court to weigh all the evidence in the case, and sustain or overrule the same according to the weight or preponderance of the evidence as the court finds it. When the verdict is, in the opinion of the court, clearly against the weight of the evidence, it is the duty of the court to set it aside. Rarick v. Ulmer, 144 Ind. 25, 42 N. E. 1099. It is clearly the duty of the trial court to weigh the evidence, though it be conflicting. Dickey v. Davis, 39 Cal. 569.

Where the weight of evidence is so manifestly against the verdict that it is evident the jury was influenced by prejudice or passion, it would be the imperative duty of the court to set the verdict aside, and a failure so to do would be an abuse of discretion. The duty of correcting the mistakes of juries is believed to be one of the most important duties a trial court is called upon to perform, and should be exercised with great caution and wise judgment. Though the court in weighing the testimony might be in doubt as to the correctness of the verdict, he should not usurp the functions of the jury

by setting their verdict aside on some difference of opinion. Where the question is close, it is believed to be the true rule that the doubt should be resolved in favor of the verdict, not against it. If the verdict is in the main just and fair, the court should sustain it, although upon some particular point, if properly presented, the court might be of the opinion that the weight of the evidence was against the finding of the jury on that point. This court will be controlled by these general rules in considering motions for new trials.

As before stated, if it was upon the ground of insufficiency of the evidence to sustain the verdict on some special point or phase of the case the defendant relied, the particular or particulars in which the evidence failed to sustain that point should have been set out in the motion. But outside of the special findings, from the view the court takes of the law of this case, it is wholly immaterial as to what distance the ship and her tow were from the shores of Alaska at the time the line parted and the tow went adrift. This fully appears from the instructions given by the court to the jury.

In the same ground of motion is found the further statement that the "verdict is against the law." The court is of the opinion that this is not a ground of motion for new trial, which, under section 229, supra, the court is required to notice. In other words, the ground is not "plainly specified." "Errors in law," under subdivision 7 of the motion, are not included in the expression "against the law." Martin v. Matfield, 49 Cal. 46. The ground of motion for new trial "against the law" is not supported by showing that the verdict is not supported by the evidence. Brummagim v. Bradshaw, 39 Cal. 35. But since no specification is made to show in what the verdict is against the law, it is believed as a ground of motion it is unworthy of consideration.

Now, considering the seventh ground for motion for new trial, we find it is also stated in the language of the statute,

"error in law occurring at the trial and excepted to by the defendant herein." What error of law occurring on the trial and excepted to by the defendant is relied upon in support of this motion? No particular ruling is pointed out; no specification of a single error is called to the attention of the court. Is there any ground "plainly specified" in this motion? Is the trial court to hunt the entire record, and ascertain, if he can, what objection was made to testimony, and what exception was taken to the ruling of the court either on the admission or rejection of testimony during the trial? Supposing the court were to find rulings in the record which seem to be error, how is he to know whether they are the ones relied on by counsel? Is the court to go through the several instructions given to the jury, considering them in every legal phase conceivable, in order to ascertain if he can what particular instruction is excepted to by the party making the motion? The object of a motion for a new trial is to call the attention of the court specifically to the errors that are claimed to have been made during the trial, that the court may have an opportunity to investigate these questions anew, and, if he finds error has been committed, to award a new trial without subjecting the parties moving to the expense of taking the case to a higher court. Another object is that the trial court shall have an opportunity to pass upon each assigned error, so that the higher court, if appeal is taken, may be clearly advised of the rulings of the court below. It is held, too, that an appellate court will not inquire into an alleged error of law on the trial not included in the motion for a new trial. Longfellow v. Smith (Kan. App.) 61 Pac. 875; McDonald v. Carpenter (Okl.) 65 Pac. 942; Boyd v. Bryan (Okl.) 65 Pac. 940; Gallagher et al. v. Cornelius (Mont.) 57 Pac. 447; McLennan v. Wilcox (Cal.) 58 Pac. 305; Thomas v. Blaisdell (Nev.) 58 Pac. 903; O'Leary v. Castle (Cal.) 65 Pac. 950.

I am of the opinion that no question of "error of law oc-
curring at the trial" is raised by this motion, because no par-
ticular error is specified in the motion. If a statement or bill
of exceptions was required to be filed before a motion for
new trial should be considered, then the bill of exceptions or
the statement might furnish the specific grounds indicated
under the general head of the motion; but neither of these
being required by our statute, the motion must take their place,
and should, in all fairness, call the attention of the court to
the specific errors complained of, and not attempt to gloss over
claimed error by this general assignment. And what is true
as to rulings of the court on questions of evidence is equally
true as to exceptions to instructions. If exception or objection
is urged to the ruling of the court on the admission of evi-
dence, the question and answer should be set forth in the mo-
tion for a new trial, and the ground of objection stated as on
the trial, so that the court may have its attention specifically
directed to the claimed erroneous ruling. If exception is taken
to a particular instruction of the court, the instruction objected
to should be set forth in hæc verba in the motion for a new
trial, and the ruling of the court thereon indicated in detail.
Anything less than this is to leave the trial court without any
means whatsoever of determining what errors are complain-
ed of.

All errors occurring on a trial, to be taken advantage of on
appeal, must be clearly stated in the motion for a new trial,
and if not included in the motion for new trial the motion may
be overruled by the court, and will not be regarded on appeal
or error. Many cases might be cited in support of this prop-
osition. Suffice it to say the authorities are practically uni-
versal.

But what shall be the character of the assignment of error
made in the motion for new trial in order to entitle it to con-
sideration by the trial court and on appeal? Vol. 14, Encyclo-

pedia Pleading and Practice, under the head of Assignments of Error in Motions for New Trial, we find the following:

"The practice is to state the grounds for a new trial separately and in separate paragraphs.   Each error complained of should be stated as a separate ground.   It is said that to present an error in excluding evidence there must be an assignment of error as to sustaining an objection to the question, and an assignment as to the exclusion of the offer of proof; but both rulings may be embraced in one assignment or specification."   Sunnyside Coal Co. v. Reitz, 14 Ind. App. 493, 39 N. E. 541, 43 N. E. 46.

The general rule is that the grounds must be stated so specifically as to direct the attention of the court and opposing counsel to the precise errors complained of.   A mere statement of the grounds, without further specification, will therefore be insufficient.   Reese v. Chaffiee, 133 Ind. 14, 32 N. E. 720, Tucker v. Hyatt, 144 Ind. 635, 41 N. E. 1047, 43 N. E. 872; Louisville R. R. v. McCoy, 81 Ky. 403; Ohio Valley R. R. Co. v. Kuhn (Ky.) 5 S. W. 419; Illstad v. Anderson, 2 N. D. 167, 49 N. W. 659.

In Nebraska it is said that errors should be so specifically and definitely assigned in the motion for new trial in the court below as to challenge the court's attention to each decision complained of, and thus give the trial judge an opportunity to review his own rulings, and correct any errors therein.   Each specification of error in a motion for a new trial should be complete in itself, and so framed as to embrace a single ruling. Aultman v. Martin, 49 Neb. 103, 68 N. W. 340.

It is insufficient to state as a ground "error of law occurring at the trial and excepted to" without further specification, as such an assignment would require the trial judge to review the entire record in the case.   Ohio Valley Ry. Co. v. Kuhn (Ky.) 5 S. W. 419.   A mere statement of the grounds for a new trial in the language of the statute is insufficient.   Dawson v. Baum, 3 Wash. T. 464, 19 Pac. 46.

In Montana it is said:

"The amendment to the Code providing that an applicant for a new trial shall give * * * the points in writing, particularly specifying the ground of such motion, while relieving the applicant from preparing a statement, does not contemplate that such grounds shall be specified with any less particularity than formerly." Taylor v. Holter, 2 Mont. 476.

It is held in North Carolina to be good practice to set out the grounds of the exception to the judge's charge in the motion for a new trial, to the end that, upon a fuller reflection, he may have an opportunity to correct the errors, if any, committed by him, and save the party the delay and expense of an appeal. But it is also held that it is not absolutely necessary to do so, because of the requirement of the statute there that the specifications of error shall be made clear in the statement on appeal. Bernhardt v. Brown, 118 N. C. 700, 24 S. E. 527, 715, 36 L. R. A. 402; Lowe v. Elliott, 107 N. C. 718, 12 S. E. 383.

Without pursuing the subject further, we think it safe to conclude that this court is not under any obligation to wade through the testimony in this case, and determine what objections and exceptions were made upon the trial either to the admission or rejection of evidence; and the court is further of the opinion that the exceptions of counsel to the instructions of the court as a part of the errors occurring on the trial, in order to avail him in the motion or on appeal, should each be stated separately, with so much of the instruction as is objected to, under a separate paragraph in the motion for a new trial. Counsel may generally, on the trial, except to each and all of the instructions given by the court, in order to save some probable objection in the future. Then, upon filing the motion for a new trial, counsel having had time to reflect and to consider what objections, if any, he may desire to urge finally, the same should be so set out in the motion for

a new trial that the court may clearly understand what is re-lied on as an exception in the case.

In the case now under discussion counsel for the defendant filed his exceptions to the several instructions given by the court, and such exceptions are now on file in this court; but no reference to them is made in the motion for a new trial, and whether reliance is placed upon each and all of the objections to instructions set forth in the written exceptions the court is unable to determine. This method of proceeding seems to be unfair to the court, and is a practice to be condemned. But taking up some of the exceptions as to instructions, I first refer to the sixth objection to part of an instruction in the following language:

"The contract of the captain and owners of the steamer Bertha was to tow the schooner Dora B. from Juneau, Alaska, to Lituya Bay, Alaska. This contract ended when the schooner should be towed into the bay, where it should be in a place of safety, or to the destination indicated in such contract. It seems from the evidence in this case that the Bertha with said tow in charge reached the mouth of Lituya Bay, but failed to take the tow into the bay and leave her there, as required by the contract of towage. It further appears that, instead of doing this, the Bertha continued westerly or northwesterly up the coast of Alaska, taking the tow with her beyond the point originally intended. The steamer Bertha, her master and owners, were at fault, and were wrongfully taking said tow beyond the point of destination, unless the conditions at Lituya Bay were such that they could not enter with safety to the steamship Bertha, her passengers and crew, or the tow; nor could they rightfully take said tow beyond the point of destination unless the conditions at or near the mouth of Lituya Bay were such as to place said steamship, her passengers and crew and said tow, in danger by laying by at that point until such time as the conditions of the weather and the tide would permit her to enter the bay in safety, and thereby complete her contract of towage. If, however, the jury find from the evidence in this case that the steamer Bertha elected to leave the mouth of Lituya Bay with her tow for any cause, and continue northward towards Yakutat, she was under the continuing obligation and duty of using due and ordinary care in taking said voyage with said tow that she was required to exercise on the trip from Juneau to Lituya Bay."

The objection made to the instruction is that it does not fully and correctly state the law, and is erroneous in quoting and commenting upon the testimony, as to which the jury is the sole judge. It will be observed from the instruction itself that no comment is made upon any evidence in the case about which there is any difference of statement among the witnesses. All the witnesses for the defendant as well as for the plaintiff testify to the facts referred to by the court in its statement as to the fact. The court refers to these facts not in dispute in order, that the law controlling the matter in controversy might be the better stated to the jury. Surely there is nothing in law or ethics that requires the court to refrain from stating and commenting upon evidence that is undisputed and is admitted on both sides.

In the ninth objection to instructions the ground of the objection is that the court attempts to present the facts of the case contrary to law, and does not fully and correctly state the law of the case. Again I say the facts referred to in this instruction are not in dispute as far as the evidence goes. The portion of the instruction objected to is as follows:

"It is claimed on the one side that the locus of the wrong or tort, if any was committed by the steamer Bertha under the direction of its captain, had its inception and was in fact committed at the point where the hawser parted and the steamer sailed away, and that such point was more than three miles from the shore of the district, and therefore outside the jurisdiction of this court, and that no relief whatever on the grounds of the complaint of plaintiff can be granted in this action.

"On the other hand, it is claimed that the parting of the hawser and the sailing away of the said steamer Bertha on her said voyage, even if it occurred outside the three-mile limit from shore, and therefore without the jurisdiction of this court, that such breaking of the hawser and sailing away of the steamer Bertha was the mere inception of the wrong or tort, and that the final disaster resulting in the death of Baldwin occurred within the three-mile limit, no matter what the place of its inception; and that by reason of the final disaster occurring within the three-mile limit that this court

has jurisdiction over the cause, and may give such relief and such judgment in the premises as the justice of the case may demand.

"Upon this question of the jurisdiction of the court I charge you as the law of this case practically in the language of Judge Morrow, or at least upon the principles stated by Judge Morrow in the case of the Mary Garrett, that it makes no difference whether the tort or wrong had its inception or origin in water without the jurisdiction of this court, if the consequential effect of the wrong, the consummation of the tort, happened within the three-mile limit. It is immaterial, so far as the jurisdiction of this court is concerned, that the tort or wrong originated on waters without the jurisdiction of the court, if the consummation of the wrong happened within the three-mile limit of land over which the jurisdiction of this court extends.

"If the jury finds from the evidence in this case that the hawser by which the Dora B. was being towed parted at a point outside of the jurisdiction of this court or outside of the three-mile limit, and you further find from the weight of the evidence in this case that the Dora B. drifted within or came within the three-mile limit of land before the final disaster occurred, and that such disaster occurred within such three-mile limit, then I charge you as a matter of law that the court has jurisdiction of this case; and if you find the facts otherwise sufficient under the instructions given you by the court you may return a verdict for the plaintiff.

"You are further instructed that it is the duty of the towing vessel toward the schooner that is being towed to use that degree of skill, caution, and due care that prudent navigators usually employ in similar service; that this was a continuing duty, one that was never discharged until the tow should be taken into a place of safety, or had passed beyond the reach of succor by the steamer Bertha. And this duty on the part of the steamer as a matter of law could not be avoided unless there was such a storm, such a turbulence of sea, or such other conditions, as rendered it unsafe for the steamer to follow her tow and conduct it from danger, if it was in danger; that the wrongful act of the steamer Bertha, if you find by the evidence it committed a wrongful act, was her failure, if she did fail, to stand by the schooner Dora B. and succor her from danger, if such standing by and succor from danger was reasonably practicable considering the conditions surrounding them. If the steamer so failed to do this, and you so find by the weight of the evidence in this case, until after the schooner Dora B. came or drifted within the jurisdiction of this court, and that the final disaster occurred within such limit, if disaster occurred, from which the deceased, Baldwin, lost his life, then I charge you that this is a wrong for which the plaintiff is entitled to recover in this case, if he may recover at all, without reference to the place of the inception of the wrong."

The objection to this instruction on the ground that the facts in the case were referred to by the court is not well taken, and I do not care to consider that proposition at all. But the one legal question of vital importance in this case is contained in this instruction, viz., if the wrong for which the steamer Bertha, her master and owners, were responsible was the parting of the hawser and the sailing away of the Bertha, leaving the schooner Dora B. to rely wholly upon her own resources to seek a place of safety, and this was the only wrong, and such wrong occurred more than three miles from shore, then, for the reason that the laws of Alaska do not extend to the high seas beyond the three-mile limit from shore, the plaintiff could not recover. If, on the other hand, the court is right in saying that the duty of the steamer Bertha towards its tow is a continuing one, and that this duty was not discharged until the tow was in a place of safety, if the duty of the Bertha continued as long as the little schooner Dora B. was struggling with wind and wave and unable to avoid wreck on the inhospitable Alaskan shore, and her wrong consisted in her failure, as the court instructed the jury, to succor and rescue her tow and continue her efforts in that direction to the time of the final disaster, and the disaster resulted from such negligence and failure, and the disaster and death of Baldwin occurred within the three-mile limit of shore, the defendant was liable for such damages as were sustained, then in my opinion there was no error in the instruction. This question was fairly placed before the jury by the instruction of the court, and whether rightfully or through error is before the appellate court for consideration. If, however, the special verdict of the jury, which was in answer to interrogatories propounded by the defendant, can be sustained under the evidence, then this instruction, if incorrect in law, is harmless error, and the verdict would be right and should be sustained, though there was such error in the instruction. But is there error in the instruction?

Counsel for the defendant cites many authorities to show that the law of the place where the negligent act was committed and not where the death occurred governs as to the right of recovery, among others: Van Doren v. Pa. R. R. Co., 93 Fed. 260, 35 C. C. A. 282.

In this case the injury to Van Doren occurred in the state of Pennsylvania, and suit was brought by the administratrix in New Jersey, where Van Doren died. The case holds that the right of action arose under the laws of Pennsylvania, where the injury was inflicted, and not in New Jersey, where the death occurred. Rudiger v. Chicago Ry. Co., 94 Wis. 191, 68 N. W. 661. This case holds that the foundation of the action was the negligent act which caused injury; in other words, that it is in the state where the act was inflicted that the right of action was created and existed, and not at the place where death occurred. Northern Railroad v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978, 38 L. Ed. 958, also holds that the law of the place where the injury was received gave the right of action, and not the place where death ensued. The court says:

"The law of the place where the right was acquired or the liability was incurred will govern as to the right of action, while all that pertains merely to the remedy will be controlled by the law of the state where the action was brought."

Le Forest v. Tolman, 117 Mass. 109, 19 Am. Rep. 400, is also cited to the same effect, and the Supreme Court of Massachusetts held that:

"The act which is the cause of the injury and the foundation of the action must at least be actionable or punishable by the law of the place in which it is done, if not also by the law of the place in which redress is sought."

This latter case was an action founded on an injury caused by a dog's bite inflicted in New Hampshire, and under the laws of New Hampshire a remedy was given.

Erickson v. Pacific Coast Steamship Co. (C. C.) 96 Fed. 80,

was a case decided by Judge Hanford, who held, in accordance with the decision before cited, that it was the law of the territory of Alaska, where the injury was committed, and not the laws of the state of Washington, where the action was brought, that gave the right of action.

De Ham v. Mexican R. R. Co. (Tex. Civ. App.) 22 S. W. 249, is in accord with the other cases cited by counsel and with the law generally upon the subject. In this case the demurrer was sustained on the ground that there was no statute pleaded giving damages for death in Mexico, and that the law of Texas, where the death occurred and the suit was brought, did not apply.

In Louisville R. R. Co. v. Williams (Ala.) 21 South. 938, the wrong complained of was in the state of Tennessee, and the action was brought in the state of Alabama. The court held that the legal consequences of the person's act are determined by the law of the place when and where the acts are performed; that the fact that the death occurred in Alabama does not affect the principal; the wrongful act causing the death having been committed in Tennessee.

In the case of Kahl v. Memphis R. R. Co. (Ala.) 10 South. 661, the court says: "It may be stated as an established proposition that if the tort complained of was not actionable in the state where it occurred it will not sustain an action in this state." And counsel for the defendant finally cites in support of his contention a quotation from the text in American & English Encyclopedia of Law (vol. 8) page 127 of the First Edition, wherein it is said:

"The place where the death occurred is immaterial in determining whether the action will lie; the place where the injury was sustained being the material question."

Upon the proposition presented in the cases referred to by counsel for the defendant the court has no dissent to offer. It is believed that the law as summed up in the quotation from

the American & English Encyclopedia of Law, Vol. 9, p. 127, is a correct statement of the proposition as sustained by the authorities generally. The case of Rundell v. La Campagnie Generale, 100 Fed. 655, 40 C. C. A. 625, 49 L. R. A. 92, and the discussion thereof and cases cited, is very valuable in determining the question here presented. Accepting this as the law, how does it affect the question presented by the instruction of the court? Where was the injury sustained which caused the death of Baldwin? Counsel for defendant seems to confound the fact of where the line parted and the Bertha sailed away with the place where the injury was received and the final disaster occurred, as if to say that the former was the tort and the wrong upon which the plaintiff claims the right of recovery. The breaking of the hawser was a mere incident—a matter that was of very easy remedy. There is no evidence in the case to show that the conditions of the weather were such that the line could not have been readily refastened to the schooner Dora B. and the tow continued. The wrong, if wrong there be, was not the breaking of the line or the accident which separated the towing steamer from her tow, but the wrong consisted in the failure of the towing steamer to look after the safety of her tow after the line parted; and in the opinion of the court this duty of using reasonable care and skill in looking after the safety of the tow was a duty devolving upon the steamer, and was a continuing duty. If the steamer allowed its tow to be drifted by the wind and wave upon the rocks of the short or the sands of the beach until it was stranded and its occupants drowned, without making any effort to recover the tow, the wrong for which this action lies was this negligence of duty, and the final disaster resulting in death would seem inevitably to have been upon the shores of Alaska within the jurisdiction of the court. The injury occurred, if any, within the three-mile limit of shore, and clearly the jury so found from the evidence in the case. The whole question of liability,

therefore, seems to me to rest upon the proposition of continuing duty of the towing steamer. The place where the injury directly resulting in death occurred is too clear for controversy. The responsibility, if any, for the injury rests upon the defendant by reason of the neglect of the steamer Bertha to stand by and succor her tow while the latter was drifting to shore. Is, then, the duty of the towing vessel a continuing one under the facts and circumstances of the case at bar?

In the case of The Margaret, 94 U. S. 494, 24 L. Ed. 146, the tug was not a common carrier, and the law of that relation has no application here. She was not an insurer. The highest possible degree of care was not required of her. She was bound to bring to the performance of the duty she assumed reasonable care and skill, and to exercise them in everything relating to the work until it was accomplished.

In the case of The Webb, 14 Wall. 406, 20 L. Ed. 774, among other things, the court said:

"The contract requires no more than that he who undertakes to tow shall carry out his undertaking with that degree of caution and skill which prudent navigators usually employ in similar service."

Among the cases tending to establish the doctrine of continuing obligation of the towing ship to stand by and succor its tow will be found Pederson v. John D. Spreckles, 87 Fed. 938, 31 C. C. A. 308; The Thomas Purcell, Jr., 92 Fed. 406, 34 C. C. A. 419; The Steamer Webb, 14 Wall. 406, 20 L. Ed. 774; Boutin et al. v. Rudd, 82 Fed. 685, 27 C. C. A. 526; Connolly v. Ross et al. (D. C.) 11 Fed. 342; The Nathan Hale (D. C.) 91 Fed. 682; The Bordentown, The Willie, and The Winnie (D. C.) 40 Fed. 682; Phillips v. The Sarah and The Tucker (D. C.) 38 Fed. 252; The Elmira, Fed. Cas. No. 4,417.

It is admitted on both sides that a suit in admiralty cannot be maintained in a court of the United States either under the general maritime law or any act of Congress to recover damages for the death of a person caused by negligence on the

high seas. No question has been raised in this case as to the right of the plaintiff to maintain the action at bar if the proximate cause of the disaster and the death of the decedent occurred within the three-mile limit of the Alaskan shore. It is true that counsel for the defendant requested the court to instruct the jury to make certain special findings, and the court gave the requested instruction for special verdict, and the jury found specially in answer to the question propounded by counsel for defendant that the parting of the line from the Dora B. occurred within three miles of the shore of Alaska. In his motion for a new trial defendant does not object to the special findings of the jury made in response to his own request, nor does he make the special finding in this behalf a ground for new trial under the motion. It would seem, therefore, that all controversy as to the place where the injury occurred, whether it be deemed the parting of the hawser and the sailing away of the towing steamer, Bertha, or the failure of the Bertha to stand by and pick up her tow and save it from disaster, is closed so far as the defendant is concerned, and he is not in a position now to question that proposition. Everything considered, the verdict in this case seems to be fairly sustained by the evidence, and the motion will be overruled.

The loss of the schooner Dora B. and the lives of the five men aboard her is without excuse of any kind. No attempt was made on the trial to present any excuse for the conduct of the captain of the Bertha in leaving those human beings in this frail craft to buffet the wind and waves in a high sea, without being properly equipped with compass or sail by which to reasonably make her way. While it is true there was contradictory evidence as to the schooner having sails and being able to make her way without assistance, there is no evidence that she was provided with a compass or any means of keeping a reckoning except by staying so close to shore as to be guided by objects thereon. For a steamer to sail away from her tow

under such circumstances, and leave the lives of men to such fate as might overtake them, was an act of such cruelty and disregard of the better instincts of humanity that one is astonished by the facts of this case as presented on the trial. It would seem as if the captain of a ship who would so disregard the most fundamental duties of his position and the demands of humane conduct should be punished more severely than any suit for damages against the owner can possibly bring.