## Cokeley and another *v.* The Snap.

(*District Court, D. New Jersey.* July 29, 1885.)

TOWAGE—NEGLIGENCE—ICE—DAMAGES.

> On review of the evidence in this case, *held*, that the towage contract was negligently performed, and that libelants are entitled to recover damages to the extent of the actual injury caused by such negligence.

Libel *in rem.*

*Hyland & Zabriskie,* for libelants.

*Wallis & Edwards,* for respondents.

NIXON, J. The libelants in this case are the owners of the canal-boat Transport, and file their libel to recover damages for negligence in the performance of a towage contract. On the twenty-ninth of February, 1884, the steam-tug Snap took in tow, at the foot of Sixth street, in Hoboken, New Jersey, the canal-boat Transport, loaded with about 230 tons of bituminous coal, consigned to Spuyten Duyvil creek. She proceeded up the river with a fresh, south-westerly wind, and when she reached the mouth of the creek was unable to enter on account of the accumulations of ice on the eastern shore of the river, whither it had been driven by the westerly wind. The western or New Jersey shore of the river was comparatively free from ice, and the master of the tug towed the Transport to the western shore; but, not finding a satisfactory landing place at Fort Lee, proceeded onward to Shady Side. The canal-boat was deeply loaded, drawing about six feet and a half of water. The tide was half ebb, and there was only a sufficient depth of water to drop the boat at the river end of one of the piers at Shady Side. She was left there, against the remonstrance of the captain of the canal-boat, as the libelants allege, and with his passive assent, as the respondents insist, but with the promise from the captain of the tug that he would return the next morning and remove her to a more safe landing place. He did not return the next morning. The boat was suffered to remain there during all of the next day and night. On the afternoon of the succeeding day the wind changed to the east, driving the floating ice from the eastern to the western shore of the river. She was cut by the ice and caused to sink, thus inflicting the damage to the boat of which the libelants complain.

The testimony is conflicting, but I think the libelants are entitled to a decree. The master of the tug undertook a certain service, to-wit, the towing of the boat to the landing in Spuyten Duyvil creek. He was prevented by the ice from completing the trip, and hence was excusable for its non-performance. But his duty under the contract did not end there. He was still bound to take reasonable care of the boat and her cargo. He might have returned with her to Hoboken on the same afternoon, but he states that he was afraid to undertake

the trip, there being a strong head wind, and the boat being heavily laden, old, and weak. Then he could have remained with her during the night, ready to proceed the next morning to his destination, and to render any aid which changes in the wind or weather might require. He did neither, but left her at the end of the pier at Shady Side and towed another boat lying there back to New York. He assumed the consequences of such an abandonment, and the damage was caused by a change of wind on the next day. He undertook such risk and must be held responsible, as I find no proof which shows that the canal-boat in any way contributed to the damages.

There has been some testimony already in regard to the extent of the injury, growing out of the attempts of the parties to compromise the case. The boat was repaired after the accident, and there is some ground for believing that an attempt was made to introduce into the claim expenses for repairing which did not arise from the injury caused by the ice. The commissioner will be careful not to include in his report any expenditures which were not fairly made for the reparation of the injury complained of.