## THE A. M. BALL.[1]

### FROST et al. v. THE A. M. BALL.

*(District Court, E. D. New York. July 24, 1890.)*

1. TUG AND TOW—CASTING OFF TOW-LINE WITHOUT NOTICE.
    It is a breach of the duty owed by a tug to her tow to cast off the tow-line without giving reasonable notice of her intention so to do, and reasonable time for the tow to take measures to insure her own safety.

2. SAME—NEGLIGENCE.
    Where the master of a tug engaged to tow a schooner, and did tow her for a short period, and then, finding that there had been a mistake in the bargain with the schooner, cast off the tow-line, whereupon the schooner, in spite of all her efforts, was carried by the wind and tide against the docks, it was *held* that the tug was liable for the schooner's damage.

In Admiralty. Action for damage to a tow in being cast adrift by her tug.

*Robert D. Benedict*, for libelants.

*Alexander & Ash*, for claimants.

BENEDICT, J. This is an action to recover damages of the tug A. M. Ball for setting the schooner Ellen Eliza adrift in the East river. The schooner was sailing up the East river to College Point, heavily loaded with brick. When somewhere below the bridge, she was hailed by the tug A. M. Ball to know if she wanted a tow. The captain of the schooner told the master of the tug that the schooner was bound to College Point, and offered to give him four dollars to tow her to that place. The master of the tug accepted the offer, and taking the schooner's line, began to tow the schooner. It appears that the master of the tug, through carelessness, had supposed that the master of the schooner had said she was bound to Hunter's Point; and, on his deck-hand calling his attention to his mistake, he at once inquired of the master of the schooner whether he was bound to Hunter's Point or College Point, and on being informed that she was bound to College Point, told the master of the schooner that he could not tow him to College Point for four dollars. Shortly afterwards the schooner's line was cast off from the tug, and the tug went off in pursuit of other business. At the time when the schooner's line was cast off by the tug, she was above the bridge, and about off Jackson street. Her sails were down, and a strong breeze was blowing off the New York shore. The schooner at once endeavored to get up her sails; but, while getting up the sails, she was carried by the wind and tide across the river; and thus, before she could gather way, she brought up on the Brooklyn side, whereby she was considerably damaged.

The evidence satisfies me that the master of the tug did not take hold of the schooner with the intention to tow her to College Point, but under the mistaken idea that the schooner was bound to Hunter's Point. This mistake was the fault of the master of the tug; for no mistake was made

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

by the captain of the schooner, and the tug's deck-hand understood College Point to be given as the schooner's destination. But, although it is evident that the master of the tug never agreed to tow the schooner to College Point, the fact remains that he took the schooner in charge, and towed her a considerable distance to a place where, in the then wind, she could not safely be cast off with her sails down. There is testimony from the tug that, when the tug cast the schooner's line off, her sails were up; but the clear weight of the evidence is that they were down, and the attempt of the tug to show the contrary only renders it more plain that it was a violation of a duty owing by the tug to the schooner, under the circumstances, to give notice of her intention to cast off the line, and to give reasonable time for getting up sail, before casting the schooner adrift. This she did not do, and this failure of duty renders her liable for the consequences of her act.

It has been contended in behalf of the tug that the immediate cause of the damage to the schooner was the fault of the schooner in omitting to cast anchor. But I do not think the tug can be absolved in that way. If to cast anchor would have been a proper maneuver on the part of the schooner when she was set adrift, it was also a proper course to endeavor to get up sail. As it appears to me, it was entirely reasonable for the schooner to attempt to get out of the predicament in which she had been placed by the tug by means of her sails, instead of coming to anchor in the middle of the river; but, at the most, it was an error of judgment which cannot be charged to the schooner as a fault conducing to the subsequent accident. The sole fault was that of the tug in neglecting the duty owing to the schooner at the time when the master of the tug discovered that he had blundered in supposing that the schooner was bound to Hunter's Point. The libelant must have a decree, with an order of reference.