MORSE et al. v. THE CHARLES RUNYON.

(Circuit Court of Appeals, Second Circuit. June 12, 1893.)

TOWAGE—LEAVING TOW AT UNSAFE BERTH—EVIDENCE.

A tug, being turned back by heavy weather, left a canal boat at a pier to which the master objected as unsafe. At low water the canal boat broke in two, and sank, and not because of any unsoundness. The water was 30 feet deep at the end of the pier, and shoaled rapidly towards the shore. The testimony as to the depth of the water at the bow of the boat was conflicting. Held, that the fact of the boat's breaking under such circumstances was sufficient to turn the scale in favor of libelants' claim that the bow grounded in shoal water, and the tug was responsible for the damages. 46 Fed. Rep. 813, affirmed.

Appeal from the District Court of the United States for the Eastern District of New York.

In Admiralty. Libel by James W. Morse and Frank Van Buren against the steam tug Charles Runyon to recover damages for the loss of a tow. There was a decree for libelants in the court below, (46 Fed. Rep. 813,) and the claimants appeal. Affirmed.

Stewart & Macklin, for libelants.

Charles M. Hough, for claimants.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. This is an appeal from a decree of the district court for the eastern district of New York, which adjudged that the libelants recover, of the claimants of the steam tug Charles Runyon, damages for neglect in respect to the boat Thomas Dobie and her cargo. The following facts were found by the district judge:

"On the 31st day of March, 1889, a contract was made by the owners of the tug Charles Runyon to tow the canal boat Thomas Dobie, loaded with a cargo of coal, from Port Johnson to Barren island. The tug started in the morning with the canal boat, but after she passed Norton point the weather proved so heavy that the tug deemed it prudent to go no further. She accordingly turned back with the canal boat, and taking the canal boat to the north side of the American cotton docks, on Staten island, left her there, alongside of the north side of pier 1. The place where the canal boat was left was not a regular slip. It had never been excavated for a slip, but was simply part of the land used by the lighthouse station at Staten island, which adjoins pier 1 of the cotton docks. At the time the canal boat was left at that pier the master of the canal boat objected to the place as unsafe. The wind was then high. During the after-

noon the master of the canal boat proceeded to New York, and informed the owners of the tug that the boat was in danger, and requested them to move her to a safe place. They promised to do so in the morning. The master also made unsuccessful efforts to procure another tug to move him to a safe place. The bottom alongside pier 1, where the canal boat was moored, was a shelving bank; the water being some 30 feet deep at the end of the pier, and shoaling towards the shore. During the night the canal boat suddenly broke in two, and sank."

These facts are fully supported by the testimony. The breakage was caused by the grounding of the bow of the boat in comparatively shoal water, the depth increasing rapidly towards the stern. The boat suddenly cracked, and sank before the captain and his wife could get ashore.

The theory of the libel was that the place where the tug left the canal boat was unsafe, by reason of insufficiency of water; that the unsafeness ought to have been known by the master of the tug; and that, when informed of the danger, the owners neglected to remove the boat to a place of safety. It was not denied that the obligation to put the canal boat into a safe place rested upon the tug when she thought it proper to suspend towage, and to leave the boat at Staten island; but the contention on the part of the tug was principally to the effect that there was an abundant depth of water where the boat lay, that the accident happened by reason of her bad condition, and that her captain was negligent in not foreseeing and preventing the danger. The conflict of testimony upon the depth of the water on the north side of pier 1 was truly said by the district judge to be "extraordinary;" but the significant fact which is at variance with the measurements of the claimants is that the canal boat did break in two while lying at this place in low water. It is a further fact that the grounding, and not her unsoundness, caused the injury.

The point was made in argument by the claimants that the captain of the canal boat was guilty of neglect in not attempting to rescue his boat and cargo from known or anticipated dangers during the day and evening before she sank, but the testimony does not support the claimants' theory. On the contrary, the captain went to New York in the afternoon of March 31st, and informed the owners of the tug of the danger, and asked their immediate assistance, but they preferred to delay until the next morning. The affirmative evidence is that he foresaw the coming trouble, and was both anxious and earnest in his attempt to gain assistance, and to save the boat and cargo.

The decree of the district court is affirmed, with costs.