## PHOENIX TOWING & TRANSP. CO. v. MAYOR, ETC., OF CITY OF NEW YORK.

(District Court, S. D. New York. March 27, 1894.)

TUGS AND TOWS—MOORING SCOW—EXPOSED PLACE—GALE—DAMAGE—LIABILITY.
Defendant chartered libelant's scow to carry garbage to sea. On returning from a trip, the scow was made fast to the sea fence, in a position which would be exposed in case it should come on to blow from the west, and without any notice of the mooring being given to libelant. There was no custom or usage between the parties that authorized defendant to leave the scow at that place without previous arrangement with libelant, although two other scows had been left there by libelant's directions during the few days previous. At the time of mooring this scow, the weather indications were threatening, and the master of the scow protested against being left there. He had thereafter no means of mooring the scow, and was in no way negligent. During the night it blew a gale from the northwest, and in the morning the scow was found to be damaged. *Held,* that defendants were liable.

Stewart & Macklin, for libelant.

William H. Clark, Corp. Counsel, and James M. Ward, Asst. Corp. Counsel, for claimants.

BROWN, District Judge. About 3 or 4 o'clock in the afternoon of Sunday, the 19th of February, 1893, the libelant's scow Seth Low, which had been used by the defendant for carrying garbage outside of Sandy Hook, was left at the Erie Basin breakwater, or sea fence. The place of mooring was comparatively safe, except as against strong westerly winds. During the night the wind changed from southward to a violent westerly gale, and the scow sank from pounding. The above libel was filed to recover damages.

Several of the libelant's scows had been in use by the defendant under arrangements for daily hire. A few days before, the defendant was notified that the scows would be wanted, and that they should be returned as soon as they were discharged. The practice upon returning scows was for the defendant to inquire by telephone of the libelant at what place the scows should be left, and to leave them in accordance with the answer received in reply. Two other scows, upon being discharged, had been left by the libelant's directions at the sea fence during one or two days preceding. The Seth Low being loaded, was taken to the stake boats at Gravesend on Saturday night, and during the following day (Sunday) towed out to sea, her cargo dumped, and she was then brought back to the sea fence, as above stated. It does not appear that any previous inquiry had been made where she should be left for the libelant to receive her; nor was the libelant notified, though the captain of the Municipal—the tug in charge—testifies that he received directions from the defendant to leave her at the Erie Basin breakwater.

When left there, the captain of the scow protested that it was not a proper place, and desired to be taken to Gowanus, not far distant. The weight of evidence shows that the weather was at that time somewhat threatening; the wind being from the south

at the rate of about 15 miles per hour, and the sky overcast. Storm signals were set on the government station three times during the day, indicating that a blow of above 25 miles an hour was to be expected. The captain of the scow did all he could to prevent being left there; he had no means of moving the scow, and, as I find, was in no way negligent or lacking in due care. At 11 o'clock p. m. the wind had hauled more to the westward, and from 10 to 12 o'clock, midnight, it increased from 19 to 33 miles per hour, and subsequently, during the night, became still more violent from the northwest. At half past 11 p. m. the boat rolled and pounded so that nothing aboard, as the captain testifies, would remain in place, and he and his wife were forced to leave her. The following morning she was found more or less broken and half full of water.

Upon the above facts, I am obliged to hold the defendant responsible for the damages. There was no usage between the parties that authorized the defendant to leave the scow at the sea fence, at the libelant's risk, without previous notice and arrangement. The libelant was reasonably entitled to have opportunity, through previous notice, to remove the boat from the place where it might be left, before it could be charged with the risk of allowing her to remain. The fact that the libelant authorized two scows previously to be left at the same place under an arrangement which gave it the opportunity to remove them at once, or to leave them at its own option, until there was need of removal, was no authority and no justification for the defendant to leave the subsequent scow without notice, and with no such opportunity. The reason why the usual arrangement was not made probably was, that the defendant's officers did not receive timely notice on Saturday from its working superintendent that the scow would be discharged on Sunday, so as to be able to communicate with the libelant by telephone on Saturday, in accordance with the usual custom. This, however, was not at the libelant's risk. Until the scow was properly delivered, she remained under the responsibility of the defendants. Due notice was necessary for such a proper delivery; and in the absence of this, the defendant remains responsible.

Decree for the libelant, with costs.