## WHITE STAR LINE *v.* STAR LINE OF STEAMERS.

1. Corporations—Powers—Partnership.
   Corporations cannot enter into copartnerships with each other.

2. Same—Carriers—Pool.
   An agreement between corporations, operating distinct lines of steamers plying between the same points, to pool their earnings, and, after paying the ordinary running expenses of all the steamers and certain extraordinary expenses, to divide the net earnings in certain proportions, does not and cannot create a partnership.

3. Contribution — Corporations Mutually Liable — Notice to Defend—Sufficiency.
   Notice by one member of a steamer pool to its associates to appear and take part in the defense of a suit for damages examined, with the circumstances of its giving, and *held*, insufficient to make them privies to the judgment.

4. CONTRACTS—ILLEGALITY—REMEDY—QUANTUM MERUIT.

    Where an accounting is permitted or a recovery is allowed for money or property parted with on the faith of an unlawful executed contract, relief is granted, not on the unlawful contract, but upon a quantum meruit, disaffirming the unlawful contract, and imposing liability for the value of benefits actually received.

5. MONOPOLIES—ILLEGAL COMBINATIONS — CONTROL OF TRANSPORTATION.

    A combination between corporations engaged in the public employment of carrying freight and passengers by boat between points without and within this State, the purpose of which is to create a monopoly in the traffic between such points, and by which the earnings of the combining corporations are pooled and divided between them in stated proportions, is unlawful and invalid under the act of Congress known as the "Sherman Act." 26 U. S. Stat. 209, chap. 647.[1]

6. SAME.

    Nor does the fact that the contract might be valid as to traffic between points in this State protect it from being declared invalid under the Federal statute.

Appeal from Wayne; Brooke, J. Submitted January 18, 1905. (Docket No. 43.) Decided November 7, 1905.

Bill by the White Star Line against the Star Line of Steamers, the Darius Cole Transportation Company, and the Red Star Line for an accounting. From a decree dismissing the bill, complainant appeals. Affirmed.

*Gray & Gray* (*Elliott G. Stevenson,* of counsel), for complainant.

*F. C. Harvey* (*John J. Speed,* of counsel), for defendants.

McALVAY, J. Complainant, a Michigan corporation, seeks of the three defendants, who are also Michigan corporations, by bill in chancery, contribution towards the expense of defending the claim and paying the judgment

---

[1] As to illegal combinations under modern anti-trust laws, see note to *Whitwell* v. *Continental Tobacco Co.* (C. C. A. 8th C.), 64 L. R. A. 689.

of one Nellie Young against the complainant company upon a liability which accrued at a time when complainant and defendants were engaged together under a contract in operating a line of steamers.

The contract entered into by the four corporations is as follows:

"Memorandum of agreement between the Star Line of Steamers, Red Star Line, the Darius Cole Transportation Company, and White Star Line, * * * for the purpose of forming and operating a line of steamers on the route between Toledo, Detroit, and Port Huron during the seasons of 1897, 1898, and 1899, three years:

"*First.* The steamers forming the line shall be the Greyhound, Darius Cole, Arundell, and City of Toledo.

"*Second.* Each boat shall be fitted out in the spring ready for service and laid up in the fall of the year at the expense of the respective owners; and the owner or owners of each boat agree to assume its own marine and fire risks.

"*Third.* The owners or managers of each boat will hire their own captains and engineers.

"*Fourth.* The steamers forming this line shall be run on the route between Toledo, Detroit, and Port Huron as deemed best for the interest of all concerned.

"*Fifth.* It is understood and agreed that the Arundell may be taken away not earlier than May 15th and returned not later than October 15th for the season of 1897, and the Idlewild substituted for that portion of the intervening time that she may be required by this pool.

"It is further agreed that if the Idlewild is cut in two and shortened, that this same arrangement may apply for the seasons of 1898 and 1899. If she is not so shortened, the Arundell is to fill the entire seasons of 1898 and 1899 for the pool.

"*Sixth.* The said steamers will run from the docks at the foot of Griswold street, Detroit, and pay four thousand dollars ($4,000) per year dock rent to the Star Dockage & Warehouse Company, Limited, for the years from February 1, 1897, to February 1, 1900; this said dock includes the front of the Williams dock on west side of Griswold street; the said steamers also to pay six hundred and thirty-five dollars ($635) to the city of Detroit for repairs at foot of Griswold street this year.

"The Star Island dock and Tashmoo Park and dock

will also be used for all of the steamers to this agreement, but any repairs to all said docks shall be borne by their respective owners.

"Said steamers to run from the docks at Toledo and Port Huron and intermediate ports, to be agreed upon by the managers of these steamers.

"*Seventh.* Mr. C. F. Bielman shall be traffic manager of the lines of steamers named, to carry out the purpose of this agreement, and shall act as treasurer at Detroit, and have full charge of clerks and stewards on board of said steamers and of all the help necessary to do the shore business subject to the approval of the managers.

"*Eighth.* The traffic manager shall receive all the earnings from each steamer and shall deposit these earnings in bank each week day to the credit of the Star-Cole and Red and White Star Lines steamers, and shall only be checked out by him on this company's checks signed by him.

"*Ninth.* The traffic manager shall pay from the gross earnings of the steamers all ordinary running expenses of the said steamers while running in this route incurred during the three years of 1897, 1898, 1899, and all the shore expenses for the years of 1897, 1898, 1899; and extraordinary expenses, such as breakdowns and accidents not exceeding five hundred ($500) dollars at any one time; the excess over that amount will be met by the steamer involved or causing the accident.

"*Tenth.* All expenses shall be paid under this agreement at the end of each month, as far as possible.

"*Eleventh.* The traffic manager shall pay to the Red and White Star Lines fifty-four (54) per cent. and to the Star-Cole Lines forty-six (46) per cent. of the net earnings of all the steamers while running on this route, after their ordinary running expenses and all the shore expenses have been paid; divisions to be made at the end of each month as far as possible.

"*Twelfth.* The masters and crews of these boats in the line will receive and obey instructions from the traffic manager as to matters appertaining to traffic and affected by this agreement.

"*Thirteenth.* In all advertising matter or official paper of any kind issued by the traffic manager, the identity of the Star-Cole Lines be maintained and be equally prominent with that of the Red and White Star Lines.

"*Fourteenth.* All the running and operating expenses

mentioned in this agreement, it is understood and agreed, shall apply only while running on the route between Toledo, Detroit, and Port Huron for the pool.

"*Fifteenth.* If matters should arise under this agreement involving dispute or misunderstanding that cannot be adjusted by the presidents of these lines, they shall appoint an uninterested party, the decision of a majority of them shall be final and binding upon the parties to this agreement.

"STAR LINE OF STEAMERS,
        "By A. R. LEE, Prest.
"RED STAR LINE,
        "By A. A. PARKER, Prest.
"THE DARIUS COLE TRANSPORTATION CO.,
        "By A. R. LEE, Prest.
"WHITE STAR LINE,
        "By A. A. PARKER, Prest."

For the seasons of 1897, 1898, and 1899 the parties operated under this contract according to its terms, made and distributed large net earnings, and at the termination thereof paid all known claims and practically closed up the business. On June 5, 1900, after this business had been substantially closed, a claim for damages was by letter presented by her attorneys in behalf of said Nellie Young, on account of injuries received by her in falling through Smith's dock at Algonac, where she had gone to meet a friend expected to arrive by the steamer City of Toledo on September 15, 1897. This letter was addressed to the Star-Cole Line, and was delivered to Mr. Lee and by him delivered to Mr. Bielman. The steamer City of Toledo was the property of complainant furnished and used by it in performing the contract herein set forth. The Star-Cole Line consisted of the defendants Star Line of Steamers and the Darius Cole Transportation Company, of each of which Mr. Lee was president. Mr. Bielman was secretary and traffic manager of complainant company, and under the contract was traffic manager and treasurer of the combination. The Smith dock at Algonac was the dock used by the steamers of the four companies while operating under the contract. The letter was

given by Lee to Bielman for investigation. He could obtain no information relative to the matter and wrote to the attorneys for Mrs. Young, June 11, 1900, requesting an interview which was afterwards had, when all liability on the part of any of the companies was denied. Suit was commenced against complainant and the owner of the dock in September, 1900. The case was tried in the winter of 1902 and resulted in a verdict of $15,000 against complainant and the dock owner. After appealing the case to this court it was settled for $8,000; each defendant paying $4,000. Complainant contends that the defendants were equally liable with it under the contract, and were notified of the bringing of the suit, and were requested to defend the same; that they were also notified when the case was to be tried; and that they took no steps to participate in the trial. Defendants were not consulted with reference to the settlement and had no knowledge relative to it.

It further appears from the bill of complaint that the complainant in 1900 entered into an agreement with defendant Darius Cole Transportation Company to operate certain of its steamers, and under said agreement has in its hands and is obligated to pay said defendant $3,250, which it prays may be applied on the amount found due upon an accounting between the parties to this suit.

Complainant's right to recover is based upon the contract of February 23, 1897, above set forth, and complainant prays contribution from these defendants upon Mrs. Young's judgment and expenses of litigation paid by complainant, according to the proportion named in said agreement for the division of net earnings. Defendants insist that the agreement was not a partnership agreement, but was to create a monopoly, and was therefore contrary to public policy and the laws of the United States; that such agreement between these corporations, if construed to create a partnership, was ultra vires. Defendants also deny that there was any liability on the part of com-

plainant to Mrs. Young, and deny they had sufficient notice of her suit to become bound by the judgment recovered by her.

The law appears well settled that corporations cannot enter into copartnerships with each other. From the agreement itself and the testimony in the case it does not appear that a copartnership was contemplated. It was a combination, designated in the writing as a pool, and by its terms did not, and could not, under the law create a copartnership.

Complainant claims that, by reason of their relations under this agreement, whether creating a copartnership or combination, their liability upon the Young judgment was mutual, and that the claimed notice of the suit was sufficient to require defendant to appear and defend the same. If it should be conceded that complainant's contention upon this branch of the case is right, we are satisfied from the record that the holding of the learned circuit judge was correct, and that no sufficient notice was given of the pendency of the suit to make these defendants privies to that judgment, and no notice whatever was given of the abandonment of the appeal to this court, and of the settlement and payment, which also included all claim of the husband.

If this agreement should be held by this court to be ultra vires, and therefore illegal, it is claimed by complainant that the case comes within that line of decisions where, when the unlawful contract has been fully or partially performed by one party, equity will decree a proper accounting. Courts at law and in equity have attempted to do justice in these cases between parties so far as could be done consistently with adherence to law by permitting an accounting to be made, or that property or money parted with on the faith of the unlawful contract be recovered, or compensation be made for it. Such recovery, however, has not been maintained upon the unlawful contract, but upon an implied contract to make good, and in all cases without exception, in so far as such contracts

have been executed and not executory, upon the equitable principle of holding a party to an accountability for benefits received. From an examination of these cases it appears that the recovery allowed was not based upon the unlawful contract, but upon a quantum meruit, disaffirming the contract and holding defendant liable for the value of benefit actually received.

In *Day* v. *Buggy Co.*, 57 Mich. 146, this court sustained this doctrine, and allowed a recovery upon a quantum meruit for goods actually furnished under a contract ultra vires, but denied a recoupment by defendant under the contract which could not be enforced.

These parties were engaged in a public employment of carrying freight and passengers between Toledo, Ohio, and Port Huron, Mich. From the testimony of the principal witnesses for both parties, as appears in the record, we find that the purpose of combination or pool between these four corporations was to create a monopoly to control this traffic between these points in different States. As such it is clearly within the prohibition of the Federal statute entitled "An act to protect trade and commerce against unlawful restraints and monopolies," known as the "Sherman Act," and is therefore unlawful and invalid (26 U. S. Stat. 209, chap. 647). It was not an agreement the execution of which incidentally restrained trade and prevented competition, and which might therefore be held to be in reasonable restraint of trade. Its purpose in its inception was to monopolize and control this traffic between those points. It cannot be held that, because this contract might possibly in some cases and under some conditions be held good as to traffic between points in the State of Michigan, it should be held in this case not contravening the Federal statute. For the purposes of this case we must construe the agreement in its entirety.

The decree of the circuit court is affirmed, with costs.

GRANT, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.