METROPOLITAN S. S. CO. v. PACIFIC-ALASKA NAV. CO.

(District Court, D. Maine, S. D.   October 28, 1919.)

No. 518.

1. ADMIRALTY ⊗═25—JURISDICTION; MODE OF OBJECTING THERETO.
   The usual way to raise the question of jurisdiction in admiralty is by
   motion to dismiss, although exceptions on that ground, if sufficient, may
   be treated as a motion to dismiss.

2. ADMIRALTY ⊗═12—JURISDICTION; CONTRACT AS CHARTER PARTY.
   A contract under which libelant delivered two steamships for a term of
   years into the exclusive possession of respondent, which was to operate
   them between designated Pacific ports, pay to libelant a stated sum per
   month, and one-half their net earnings after deducting such payments, and
   return them on termination of the contract in good repair and with an
   equal amount of apparel and furniture on board, *held* a charter party,
   and a suit for its breach within the maritime jurisdiction.

3. PARTNERSHIP ⊗═20—RELATION; CHARTER OF VESSELS AS CREATING.
   A contract by which libelant delivered two steamships for a term of
   years into the exclusive possession of respondent, which was to operate
   them and pay to libelant a share of their net earnings, *held* not to
   create a partnership.

4. ADMIRALTY ⊗═7—JURISDICTION; INCIDENTAL ACCOUNTING.
   A court of admiralty will not refuse jurisdiction of a suit on a maritime
   contract because it incidentally involves an accounting.

5. SHIPPING ⊗═3½, New, vol. 8A Key-No. Series—FEDERAL CONTROL; EFFECT
   ON TIME CHARTER.
   The requisitioning by the United States of ships under a time charter
   *held* a termination of the charter under the terms as pleaded, which
   entitled the owner to the full price paid for the vessels as against a claim
   of the charterer for the cost of repairs which, under the charter, it was
   required to make at its own expense.

In Admiralty. Suit by the Metropolitan Steamship Company against
the Pacific-Alaska Navigation Company. On exceptions to libel.
Overruled.

Bradley & Linnell and Nathan W. Thompson, all of Portland, Me.,
for libelant.

Verrill, Hale, Booth & Ives, of Portland, Me., and Haight, Sandford
& Smith, of New York City, for respondent.

HALE, District Judge. The libelant, a New Jersey corporation,
alleges:

That, on or about the 31st day of July, 1916, it entered into a char-
ter party with the respondent, a Maine corporation, under which
the libelant agreed upon the chartering to the respondent of the
steamships Harvard and Yale, then owned by the libelant, and fitted
for coastwise passenger and freight business, in which they were then
engaged; that these steamships, under this indenture, were to be oper-
ated by the respondent for a term from September 1, 1916, to Decem-
ber 31, 1921, between certain ports, named in the contract, on the
Pacific Coast; that, by virtue of the charter party, the respondent
agreed to pay a certain part of the charter money in advance in month-

ly payments; that, among the other material provisions of the charter party, are the following:

"Third. That the net profits in each calendar year from the operation of said steamships, in excess of the amounts paid by said respondent to said libelant, should be equally divided between said parties, and that, in determining the amount of such net profits for such calendar year, said respondent should charge against the gross income resulting from the operation of said ships, and the conduct of said business, ten (10) per cent. of the gross earnings of said ships for that year; and said respondent, in consideration of said allowance of ten (10) per cent. of such gross earnings, agreed to pay out of its own treasury, and without allowance therefor, all overhead expenses, including the superintendence of the maintenance and repairs of said ships, and in addition to the aforesaid sum of ten (10) per cent. of the gross earnings, there should be charged as expenses of the business conducted by means of said ships, the following expenses, if actually and directly incurred in said business during said year, to wit: 'The proper actual direct cost on said ships of the maintenance and operation thereof.'

"Fourth. That the respondent would, at its own expense (chargeable as an expense of maintaining said ships under paragraph 3 of said charter party), except as such expense might be actually covered by then existing policies of insurance, during the whole term of said charter party and any extensions thereof, maintain, preserve, and keep each of said steamships Yale and Harvard, and all property of the libelant located on said ships, or appurtenant thereto, or used in said business, in thorough working order and repair, and make all needful or proper repairs, renewals, replacements, additions, and changes of every nature upon each of said steamships, and make all changes, additions, renewals, and repairs upon or about each of said steamships, which might be required for their most economical operation, or which might be required by any government inspector, or by any inspectors appointed by underwriters of said steamships, and fully comply with all other requirements of such underwriters, and with all the requirements of the American Bureau of Shipping, in order to maintain the classrating then held by said ships.

"Fifth. That the character and value of certain perishable parts of the tackle, apparel, and furniture belonging to said steamships, were correctly shown by an inventory to be attached to said charter party as 'Schedule A,' which inventory, prepared and agreed upon by the parties to said charter party, and annexed thereto, the libelant begs leave to file in this proceeding, and to produce at the hearing of this cause."

That the respondent agreed:

"That at the end of said charter term, or upon the termination of said respondent's rights in said charter party, if sooner terminated, each of said ships (except in case of total loss thereof), should have on board, as the property of said libelant, similar articles to those included in said 'Schedule A,' which should be of the aggregate value of at least that shown upon 'Schedule A,' annexed to said charter party."

The libelant alleges:

"Sixth. That immediately after the making of said charter party said steamships were taken into the possession of said respondent under the terms and provisions thereof, and thereafter operated by it on the Pacific Coast between the ports and places hereinbefore stated; and such operations continued until on or about the 13th day of March, 1918, when said steamship Yale was requisitioned by the United States government under the provisions of an act of Congress relating thereto, and such operation of said steamship Harvard continued until the 21st day of said March, when she was also requisitioned by said United States government under the provisions of the aforesaid act; and at the time of the surrender of said ships by said respondent to said United States under and by virtue of the aforesaid act of Congress the perishable parts of the tackle, apparel, and furniture belonging

to said ships, were of the value shown by an inventory then made on the part of said United States, but at the time of the delivery of said ships by said respondent to said United States, said property, inventoried, as aforesaid, was not of the aggregate value shown in said 'Schedule A,' which the respondent received from the libelant under said charter party, but was then of the value of only $106,350.77."

And:

"Seventh. That in consequence of the respondent's failure, upon the termination of its rights under the terms and provisions of said charter party, to have on board said ships, or deliver to said United States as the property of the libelant, articles similar to those embraced in said 'Schedule A,' and of the aggregate value of at least $214,054.80, being the appraised value thereof at the time said ships and the property mentioned in said 'Schedule A' came into the respondent's possession under the provisions of said charter party, the respondent became liable to the libelant for the difference between the aforesaid appraised value of said property at the time of the delivery of said ships or the sum of $214,054.80, less the value thereof at the time the same came into the possession of said United States, or the sum of $106,350.77, or the sum of $107,704.03."

Section 8 of the libel, as amended, alleges:

"That during the latter part of the time said steamships were in the possession of said respondent under the terms and provisions of said charter party it made certain repairs to the boilers of said vessels, and to other parts thereof, which, under the provisions of said charter party, it was legally bound to make at its own cost; and such repairs were paid for by said respondent from the moneys which it deducted from the earnings of said ships, under the terms of said charter party, and referred to in paragraphs third and fourth of this libel, yet, notwithstanding the obligation upon the part of said respondent to make such repairs at its own expense, and from moneys which it retained as aforesaid, when said steamships were requisitioned by said United States, said respondent claimed that it should be reimbursed for the repairs made as aforesaid to the extent of forty thousand (40,000) dollars. That by reason of said claim on the part of the respondent a decision was filed by the Secretary of the Navy, the substance of which provided that the sum of forty thousand dollars ($40,000) would not be paid over to any one until the claims were adjusted between the parties, whereupon, by a stipulation dated September 24, 1918, libelant and respondent agreed that, while reserving to themselves, and each of them, their respective rights as to the sum of two million eight hundred thousand ($2,800,000) dollars and the sum of forty thousand ($40,000) dollars, the United States government might pay the two million eight hundred thousand dollars ($2,800,000) to the libelant, and forty thousand dollars ($40,000) to the respondent, and be relieved from further liability to each in respect to said sums, all as shown by a copy of said decision of said Secretary of the Navy, and said stipulation between the libelant and respondent, which are together annexed hereto and made a part of this libel, marked 'Exhibit A.' Said sum of forty thousand dollars ($40,000) was thereupon, under the terms of said stipulation, paid by said United States government over to said respondent, and the same is now held by it, the said respondent, although said amount should have been paid to the libelant and now belongs to the libelant, and said sum is now held by said respondent in trust for the benefit of the libelant."

Section 9 alleges:

"That the aforesaid sums, amounting to the sum of $147,704.03, together with interest on said amount from the 17th day of October, 1918, is justly due the libelant, and it seeks to recover the same in this proceeding."

[1] The respondent says that this libel does not state a case of which this court in admiralty has jurisdiction; that, with respect to

either of the complaints alleged, it does not allege facts sufficient to constitute a cause of action. This question is raised by exceptions to the libel. The usual way to raise the question of jurisdiction is by a motion to dismiss. There is some authority for allowing such question to be raised by exceptions; the prevailing practice is to limit the use of exceptions substantially to that provided by rule 36 of the Rules of Practice in Admiralty (29 Sup. Ct. xliii), namely, to matters of "surplusage, irrelevancy, impertinence, or scandal." But the exceptions, taken together with the specifications of exceptions, may be regarded as, in substance, a motion to dismiss, and as duly bringing the contention before the court. In matters of pleading, admiralty courts seek to get at the substance of a defense, and not to insist upon set forms.

The respondent says that the so-called "charter party" is no charter party at all, but a partnership agreement; and that, in any view of the case, the subject-matter of dispute between the parties, based upon this agreement, or growing out of it, is not of a maritime nature; and is not within admiralty jurisdiction; that matters for accounting are clearly presented; that the controversy between the parties can be adjusted only by means of accounting; and that such accounting requires a proceeding in equity. The respondent alleges, also, with respect to the matter stated in the eighth section of the libel, relating to the sum of forty thousand (40,000) dollars, claimed by the libelant, that no facts are stated in the libel sufficient to constitute a cause of action, and that with reference to this matter, also, the rights of the parties can be adjudicated only under a proceeding in equity.

Upon inspection, it will be seen that the libel states, as its first complaint against the respondent, that the indenture entered into between the parties, in July, 1916, provided that the libelant's steamships were to be operated by the respondent for a certain term of years, between certain ports enumerated on the Pacific Coast, under its exclusive control; that the respondent agreed to pay for their use a certain part of the charter money in advance, in monthly payments; that the net profits each year from their operation, in excess of the amounts paid by the respondent to the libelant, should be equally divided between the parties; that, in determining the amount of such profits for such year, the respondent should charge against the gross income from their operation and the conduct of the business 10 per cent. of their gross earnings for that year, and that, in consideration of this allowance of 10 per cent. of such gross earnings, the respondent agreed to pay, out of its own treasury, without allowance therefor, all overhead expenses, including the superintendence of the maintenance and repairs to the ships, and, in addition to the sum of 10 per cent. of the gross earnings, there should be charged as expenses of the business conducted by the ships, the actual direct cost of maintenance and operation; that the respondent should, at its own expense, maintain and preserve the ships and all property of the libelant on them, or appurtenant thereto, or used in the business, in thorough working order and repair, and make all needful repairs, renewals, additions, and changes of every nature upon them, which might be

needed for their economical operation, or required by any government inspector, or by any inspectors of underwriters, and all other underwriters or shipping agents, in order to maintain their classrating. In short, the full conduct and care of the ships was put in the charge of the respondent. The libelant parted with the possession of the ships and the respondent acquired actual and exclusive possession and control of them.

The agreement pleaded is alleged to contain the stipulation that the character and value of certain perishable parts of the tackle, apparel, and furniture of the ships is as shown in a certain inventory attached to the agreement as "Schedule A," and the respondent is alleged to have agreed that, at the end of the charter term, or upon the termination of the respondent's rights in the charter party, if sooner terminated, each of the ships (except in case of total loss thereof) should have on board, as the property of the libelant, similar articles to those included in "Schedule A," and which should be of the aggregate value of at least that shown upon "Schedule A." Then follows the allegation that, after the making of the charter party, under its terms the ships were taken into the possession of the respondent, and operated by it on the Pacific Coast, and that such operations continued until March, 1918, when both steamships were requisitioned by the United States government under the provisions of an act of Congress; that at the time of their surrender by the respondent to the United States the perishable parts of their tackle, apparel, and furniture were of a value shown by an inventory then made on the part of the United States, but at the time of their delivery by the respondent to the United States such property was not of the aggregate value shown in "Schedule A," but was of a much less value. That therefore, upon the termination of its rights under the charter, the respondent failed to have on board the ships, or to deliver to the United States as the property of the libelant, articles similar to those embraced in "Schedule A," and of the aggregate value of the full sum of $214,054.60, the appraised value thereof at the time the ships mentioned in "Schedule A" came into the respondent's possession; and that, therefore, the respondent became liable to the libelant for the difference between the appraised value of the property at the time of the delivery of the ships to the respondent and the value thereof at the time they came into the possession of the United States, and that such difference amounted to the sum of $107,704.03.

[2] 1. The initial defense raised by the respondent is that the contract stated is not a maritime contract. I cannot sustain this defense. The part of the libel to which I have called attention clearly presents a case of the hiring of the two ships for the carriage of persons and property on the Pacific Coast, between certain designated points, in navigable waters. It clearly presents something more than a mere foundation for future maritime contracts, to be made by the respondent, for the carriage of passengers and freight upon the ships. It states a case of the hiring of these ships to a charterer, such charterer to have exclusive possession of them, to keep them in repair, carry passengers and freight with them between certain designated ports

upon the high seas, to preserve their tackle, apparel, and furniture, and, upon termination of the contract, to have on board, for the benefit of the libelants, certain enumerated property. It states a failure on the part of the respondent to carry out the terms of this contract. I think this agreement, as stated, meets the requirements of a charter party. It is a maritime contract, entitled to be adjudicated in a court of admiralty. As Mr. Benedict has said, it is the substance of an undertaking, and not the mere form of words, which creates liability and confers jurisdiction. The substance of the undertaking, here stated, has reference to a specific, determined, maritime service of two ships hired to the respondent for the carriage of persons and property, upon navigable waters. Benedict's Admiralty, 4th Edition, § 200, p. 158. Insurance Co. v. Dunham, 11 Wall. 1, 20 L. Ed. 90; Morewood et al. v. Enequist, 23 How. 493, 16 L. Ed. 516; North Pacific S. S. Co. v. Hale Brothers Co., 249 U. S. 119, 125, 39 Sup. Ct. 221, 63 L. Ed. 510; Boutin et al. v. Rudd, 82 Fed. 685, 27 C. C. A. 526; The Richard Winslow, 71 Fed. 426, 428, 18 C. C. A. 344. In The Yankee Blade, 19 How. 82, 15 L. Ed. 554, the libelant had not hired the vessel, or any portion of it, nor had the masters or owners covenanted to convey any merchandise for the libelant, nor had he agreed to furnish them any. In that case the Supreme Court quoted the definition of a charter party, given by Abbott:

"A charter party is a * * * contract by which an entire ship, or some principal part thereof, is let to a merchant for a conveyance of goods on a determined voyage to one or more places."

On an inspection of The Yankee Blade, the case seems not to be an authority against my conclusion.

Many other cases have been brought to my attention, disclosing instances where courts have held that certain contracts, bearing some similarity to this agreement, were not of a maritime nature and did not give jurisdiction to an admiralty court. Upon examination, however, of the cases cited by the learned proctor for the respondent, I think they will be found to sustain the conclusion, which I have stated, that the contract before me is a maritime contract which may properly be adjudicated in an admiralty court.

[3] But the respondent says that, even though the contract may have maritime features, it is a contract of partnership, and that the rights under it cannot be adjudicated except under proceedings in equity. The libelant's statement of its case does not sustain this contention. · Following the current of our federal decisions, the requisites of a partnership are, in substance, that the parties must have joined together to carry on a venture for their common benefit, each contributing property or services, and having a community of interest in the profits. In Meehan v. Valentine, 145 U. S. 611, 620, 12 Sup. Ct. 972, 36 L. Ed. 835, in speaking for the Supreme Court, Mr. Justice Gray discusses the question of how far sharing in profits will make one liable as a partner. He says that it was the former rule that a man who received a certain share of the profits, as profits, with a lien on the whole profits as security for his share, was liable as a partner for the debts, but that merely receiving compensation

for services estimated at a certain proportion of the profits did not render one liable as a partner. In this opinion he shows that partnership is founded upon the principles of agency. He says:

"A partner, indeed, virtually embraces the character both of a principal and of an agent. So far as he acts for himself and for his own interest in the common concerns of the partnership, he may properly be deemed a principal; and so far as he acts for his partners he may as properly be deemed an agent. The principal distinction between him and a mere agent is that he has a community of interest with the other partners in the whole property and business and responsibilities of the partnership; whereas an agent, as such, has no interest in either."

He cites the crisp statement of Sir George Jessel:

"You cannot grasp the notion of agency, properly speaking, unless you grasp the notion of the existence of the firm as a separate entity from the existence of the partners, a notion which was well grasped by the old Roman lawyers, and which was partly understood in the courts of equity."

In Commentaries on Partnership, first published in 1841, a classic upon this subject, Mr. Justice Story said:

"Every partner is an agent of the partnership; and his rights, powers, duties, and obligations are in many respects governed by the same rules and principles as those of an agent. A partner, indeed, virtually embraces the character both of a principal and of an agent. So far as he acts for himself and in his own interest in the common concerns of the partnership, he may properly be deemed a principal; and so far as he acts for his partners he may as properly be deemed an agent. The principal distinction between him and a mere agent is that he has a community of interest with the other partners in the whole property, business, and responsibilities of the partnership; whereas an agent, as such, has no interest in either.   *   *   *

"A participation in the profits will ordinarily establish the existence of a partnership between the parties in favor of third persons, in the absence of all other opposing circumstances."

In deciding the case, Mr. Justice Gray held that a man who had loaned a partnership, composed of other persons, a sum of money, stipulating that he should receive legal interest and in addition one-tenth of the yearly net profits of the business, in view of the fact that he never exercised any control over the business, did not thereby become a partner. Ward v. Thompson, 22 How. 330, 334, 16 L. Ed. 249; Karrick v. Hannaman, 168 U. S. 328, 18 Sup. Ct. 135, 42 L. Ed. 484; Fechteler et al. v. Palm Brothers, 133 Fed. 462, 66 C. C. A. 336; Dwinel v. Stone, 30 Me. 384; Rogers v. Lawton (C. C.) 162 Fed. 203; Holmes v. Old Colony, etc., Co., 5 Gray (Mass.) 58; The Crusader, Fed. Cas. No. 3456; White Star Line v. Star Line Steamers, 141 Mich. 604, 105 N. W. 135, 113 Am. St. Rep. 551.

In the case at bar, the libel alleges a sharing of profits between the parties; but it also alleges other controlling and "opposing circumstances"; that the respondent was to operate the ships, and had the exclusive right to conduct the business relating to such operation. It follows, from the allegations of the libel, that the respondent had no right to incur liabilities which should bind the libelant, and that it became the owner of the ships "pro hac vice." The pleadings show no community of interest or mutuality between the parties. The existence of a "firm as a separate entity" is not disclosed. The only

characteristic of a partnership is that a share in the profits is provided for. But I think it appears that such sharing was intended for compensation for services and for the use of the property. I am of the opinion that the libel does not state a case of such relationship between the parties as constitutes a partnership.

[4] The respondent contends further that this court should not entertain jurisdiction of the contract stated in the libel, because the statement of the case shows that an accounting will be required between the parties, and that such accounting is not a subject-matter within the jurisdiction of an admiralty court.

It is true that admiralty will not take jurisdiction of accounting between parties, where such accounting arises in matters relating to strict partnership matters which cannot be adjudicated except in equity. But I have already held that this is not such a matter. The fact that final accounting will be required between the parties as incidental to the controversy between them will not cause admiralty to refuse jurisdiction in a maritime matter, but will rather induce it to extend its powers to include such incidental accounting. Judge Ware held that, if the accounting arises incidentally in a cause, it is a question of sound discretion whether or not the court will proceed with the cause. The Larch, 3 Ware, 34, Fed. Cas. No. 8086; The John E. Mulford (D. C.) 18 Fed. 456, 458. The Emma B (D. C.) 140 Fed. 771. Hughes on Admiralty, par. 189; Benedict on Admiralty (3d Ed.) par. 263a.

The Zillah May (D. C.) 221 Fed. 1016, and other cases, are brought to my attention, showing instances where courts have denied jurisdiction to courts of admiralty in the matter of an accounting between copartners or part owners. These cases, however, do not, I think, give any rule different from that stated in the cases already cited. The H. E. Willard (D. C.) 53 Fed. 599, decided in this district, merely reiterates the law that a court of admiralty will not assume jurisdiction in the matter of accounting between part owners; but it does not discuss cases where questions of account arise incidentally upon the final settlement of maritime transactions.

In the case at bar, it is clear that a final accounting may be required; but it is so required in many cases in admiralty. So far as the pleadings suggest a final accounting, they show that such accounting will be incidental to the main question and clearly allowable in admiralty proceedings.

[5] 2. Section 8, as amended, states the second complaint in the libel: That the charterer—the respondent—by the terms of the charter party was, at its own expense, to maintain, preserve, and keep each of the ships in thorough working order and repair, and make all needful repairs, renewals, replacements, additions, and changes of every nature upon them; that the term of the charter party was interrupted by the requisitioning of the ships by the United States, and that this constituted such a "termination" as was contemplated in the charter party; that certain repairs were required on the steamships to keep them in repair, up to the time of their being taken over by the government; that the repairs were made, but that, instead of making

them at its own expense, as provided by the contract, the charterer attempted to reimburse itself for them by obtaining from the United States government $40,000 of the money owed to the libelant. The libel proceeds upon the theory that, after the repairs, additions, and replacements were made upon the ships, the resulting value became the property of the libelant; that therefore the libelant was entitled to have it included in the sum paid by the United States for the ships; that by the action of the charterer the libelant was deprived of the $40,000 lawfully coming to it; and that therefore the charterer committed a breach of its covenant to repair at its own expense, because it used money belonging to the libelant to cover such repairs. In short, the libelant seeks to recover $40,000, alleged to have been paid over to the respondent, and held by it unlawfully and against the provisions of the charter party. It seems clear that section 8 states a case arising out of a material part of what I have already held to be a maritime contract.

The respondent says that, in this matter, the libel does not state a cause of action, because, under the contract, the respondent had an interest in the ships, for which it was entitled to be compensated, and that it is not alleged that the $40,000 was more than sufficient compensation. Nothing stated in the libel bears out the respondent's contention that the $40,000 was paid to it for an interest which it had in the ships themselves. Under the allegations of the libel, it was paid for the repairs which the respondent made; it appears that the respondent had the exclusive right of possession, and the right to receive profits from the operation arising from such possession. The libel does not state an interest of the respondent in the ships themselves. It appears, from the libel, that the rights of the respondent were to be regarded as having matured at the end of the charter term, or "if sooner terminated," and that this applies both to the property of the libelant to be found on board the vessels and to the provision with reference to repairs, upon which the claim of $40,000 is based. I think the taking over of the vessels by the government was such termination of the rights provided for in the contract as was contemplated by its terms. I am of the opinion that article 8 as amended, states a cause of action within admiralty jurisdiction.

The exceptions are directed, of course, only to the pleadings. The charter party itself is not made a matter of pleading. The libel states that a copy of the agreement will be filed and produced at the hearing of the cause; but that does not make it a part of the pleadings. When produced, it will be evidence. It is not before me, although it has been referred to by the learned proctors as if it were a matter now before the court. I have therefore followed only the allegations of the libel; I find these sufficient and well pleaded.

My conclusion is that the libel has sufficiently advised the respondent of a case against him, and that both causes of action, making up the case, relate to maritime transactions, and are within the admiralty jurisdiction of this court.

The court retains jurisdiction of the libel. The respondent's exceptions are dismissed. The respondent may file an answer, within the admiralty rules.